HUGHES TOOL COMPANY, Plaintiff, *v.* BENJAMIN FIELDING, as Commissioner of Licenses of the City of New York, et al., Defendants.

Supreme Court, Special Term, New York County, April 3, 1947.

948

Poletti, Diamond, Rabin, Freidin & Mackay for plaintiff.

Charles E. Murphy, Corporation Counsel (Charles F. Preusse, Daniel Rosen and Murray Rudman of counsel), for defendants.

SHIENTAG, J. Plaintiff moves for an order striking out four affirmative defenses. Defendants cross-move for judgment on the pleadings.

This is an action for a declaratory judgment and an injunction. The action seeks the determination of a question of law to the effect that an exhibitor of a motion picture licensed by the State of New York in accordance with the provisions of article 43 of the Education Law is not subject to prosecution under section 1140-a of the Penal Law, nor may a motion-picture theatre license be revoked because of the exhibition of such a licensed film.

Defendants' motion for judgment on the pleadings is based on the allegation that the complaint fails to state facts sufficient to constitute a cause of action, that the plaintiff is not a proper party plaintiff, that the necessary interested parties have not been joined in this action, that the subject matter of the complaint is not a proper subject for declaratory judgment, that questions of fact are raised by the pleadings so that a declaratory judgment should not be granted, that the complaint is a device to circumvent the rule that equity will not restrain the enforcement of criminal laws, and that the plaintiff has adequate remedies at law available to it.

The plaintiff has produced a film called " The Outlaw ". That film was reviewed in accordance with article 43 of the Education Law and was licensed by the Motion Picture Division of the Education Department of the State of New York on February 13, 1946. Public announcements were made that the

picture would open simultaneously at three Broadway theatres on October 26, 1946. The defendants the Commissioner of Licenses of the City of New York and the Police Commissioner of the City of New York requested a private showing. After this showing, it is charged, the Commissioner of Licenses contended that the film was obscene and threatened to revoke the license of any theatre which exhibited it. The Police Commissioner threatened and continues to threaten to prosecute any such person under section 1140-a of the Penal Law. Faced with this situation, the producer of the film brought this action, alleging in paragraph 14 of the complaint: "By reason of this dispute with respect to the right to exhibit a licensed motion picture, a judicial determination of the construction and interpretation of Article 43 of the Education Law, and the nature and effect of a State license issued pursuant thereto, is desirable and necessary."

The first question presented is whether this action lies at all for a declaratory judgment. This action offers an ideal situation for the determination of a question of law. (*New York Operators* v. *State Liquor Authority*, 285 N. Y. 272; *New York Post Corp.* v. *Kelley*, 296 N. Y. 178.) There are no questions of fact here present. Nothing is occurring which interferes with or stays either the Commissioner of Licenses or the Police Commissioner from acting in accordance with their convictions. No motion picture is being shown and no violation of the law is taking place. There is no reason why the court cannot and should not determine the issue presented by the plaintiff.

The producer is a proper party to bring the action. The fact that all interested parties have not been joined does not warrant the dismissal of the complaint.

The questions of law presented are whether article 43 of the Education Law sets up an exclusive and uniform system for the censorship of motion pictures for the entire State; whether the license certifies the fitness of the film to be seen; and whether this determination, though reviewable by the courts at the instance of the applicant, is not reviewable through prosecution under the penal law by action of the police or licensing authorities throughout the State.

In 1921, the New York State Legislature created a Motion Picture Commission with censorship powers over films to be exhibited in the State (L. 1921, ch. 715). In 1927, this commission was succeeded by the Motion Picture Division of the State Education Department, and the Education Law was amended to

include article 43 (L. 1927, ch. 153). Section 1080 of article 43 provides for the continuation of the Motion Picture Division and for its personnel and expenses. The division is headed by a director appointed by the Board of Regents on the recommendation of the Commissioner of Education. Other officers and employees are similarly appointed. Local offices for the examination of films and the transaction of other business are authorized by section 1081. Article 43 establishes three categories of motion-picture films — namely, those which require a license, those requiring a permit and those which may be exhibited without either. Current events films, or newsreels, may be exhibited, without a permit or a license, at the risk of the exhibitor that they are fit to be seen. Scientific and educational films intended for charitable and similar purposes are entitled to receive permits upon application therefor, without an inspection of the film (§ 1083). All other motion pictures must be submitted for examination with a required application for a license and fees (§§ 1086–1087). Under section 1082 it is the duty of the director or other authorized officer of the division to examine promptly every film submitted for a license, and "  *   *   *   unless such film or a part thereof is obscene, indecent, immoral, inhuman, sacrilegious, or is of such a character that its exhibition would tend to corrupt morals or incite to crime, shall issue a license therefor." If an application is denied, the inspecting officer must report to the applicant the reasons for his rejection, and the applicant may appeal to the Board of Regents. If the Regents affirm the refusal to license. the applicant may obtain a further review in the courts (§§ 1082. 1084). Under section 1088, a license issued on a misleading application is void *ab initio*. After the issuance of a license or permit, changes or alterations, except cuts, void the license. Permits are made revocable on five days' notice, under section 1085. The statute makes it unlawful to exhibit any motion picture which requires a license, without a valid license. A licensed film must contain identification matter prescribed (§ 1089). Posters, banners, or other similar advertising matter failing to meet the standards of morality established for the films themselves may not lawfully be exhibited, and the exhibition of such advertising matter constitutes grounds for the revocation of a license (§ 1090). Violation of any provision of article 43 is a misdemeanor. A conviction for a crime committed by the exhibition or unlawful possession of a film automatically revokes any outstanding license (§ 1088).

Section 1092 of the Education Law provides as follows: " The board of regents shall have authority to enforce the provisions and purposes of this article; but this shall not be construed to relieve any state or local peace officer in the state from the duty otherwise imposed of detecting and prosecuting violations of the laws of the state of New York. In carrying out and enforcing the purposes of this article, the regents may make all needful rules and regulations."

From this analysis, it seems to me that article 43 of the Education Law, sections 1080 to 1092, inclusive, forms a complete, self-contained statutory system for the regulation of motion pictures to be exhibited in the State of New York, with particular emphasis on their moral content. I believe that it was the intention of the Legislature to create a uniform and exclusive State-wide system of motion-picture censorship.

The dispute in this case arises largely out of the sentence in section 1092 of the State Education Law which reads that it " * * * shall not be construed to relieve any state or local peace officer in the state from the duty otherwise imposed of detecting and prosecuting violations of the laws of the State of New York." Because of the existence of this sentence, defendants claim the power to have rejudged the moral quality of any licensed film. The argument runs that section 1141 of the Penal Law provides for the punishment of anyone exhibiting an obscene picture, that this section was in the Penal Law prior to the passing of article 43 of the Education Lew, and that the. duty to enforce it continues regardless of any action by the Board of Regents.

It is a familiar principle of statutory construction that where there is a statute in general terms and a further statute which legislates for a particular field, the provisions of the special statute to be given effect must be deemed to have modified the general statute *pro tanto*. There is nothing necessarily inconsistent in the existence of these two statutes side by side. There are indeed numerous questions which may arise after the licensing of a film which may need police action. It is also a fact that under certain conditions films which are not subject to license requirements may be shown and in that event the police, if they deem the film obscene would have the duty of prosecuting.

This case is of first impression in this State. The exact point, however, came up in Virginia, where there is a statute modeled largely upon article 43 (*City of Lynchburg* v. *Dominion Theatres,*

175 Va. 35). The court said that from the comprehensive language used, the title of the acts, the evils to be remedied and the system chosen, the intent to establish a uniform method of admeasurement to films was indicated and was intended to apply throughout the State, and that in the judgment of the Legislature this method would best safeguard the people of the State against the exhibition of improper films and insure against prosecution the owners of the films who were taxed to pay for the inspection thus required and made. The court further said (p. 43): " What films may be shown must be determined by the Division of Motion Picture Censorship. The statutes vest that power exclusively in the division and provide a uniform means for the inspection of films and the issuance of permits for their exhibition. * * * If municipalities may censor films and determine the right of the owners to exhibit them, then the unified control plan as outlined in the State statutes would be ineffectual and inoperative to carry out the expressed intention of the legislature."

I therefore hold that a regulatory system has been established by the Legislature and that it supersedes inconsistent provisions of law. The question arises, however, whether there is anything inconsistent in the action proposed to be taken by the city authorities. Article 43 of the Education Law provides for a review of the decision of the Director of the Division by an appeal to the Board of Regents at the request of an exhibitor who is aggrieved by the failure to issue a license. In the event of an adverse decision by the Board of Regents, the applicant is given the right to review the determination, by a certiorari order. The law has not provided for a review of the decisions of the board by an order under article 78 of the Civil Practice Act at the request of members of the public or their representatives, the police or licensing authorities. This failure to provide for a review may or may not have been inadvertent. The proposed action of the defendants in this instance, however, amounts, in my opinion, to a proceeding to review in a court of law the decision of the Department of Education that this film was fit for public exhibition. In the last analysis, what is proper to be shown to the public must be decided by the public, through the courts. A prosecution and a conviction which is subject to review by the Appellate Division and the Court of Appeals is one possible and not unreasonable method of accomplishing the purpose of reviewing this question of fact as to the fitness of the film to be shown. It is true that a conviction in one part of

the State will have State-wide significance. It is also true that the public in one part of the State may well differ with the authorities in the prosecuting community as to the fitness of the film. But this problem will arise under any system of review. A jury or a judge who will try the facts must come from some particular part of the State and may be influenced by the customs and opinions obtaining therein. I see no insuperable objection to the proposed procedure. At any rate, until the Legislature provides for review in a specific way, I think that the industry must run the chance of having its pictures either exonerated or condemned by this method of review.

Whatever doubt I might have had as to the correctness of my conclusion has been settled by the decision in *United Artists Corp.* v. *Amity Amusement Corp.* (271 App. Div. 825). In that case all the contentions made before me as to the interpretation of this law were presented to the Appellate Division, and the affirmance of the order made at Special Term must be taken to mean that a police prosecution is permissible under the section of the Education Law above discussed.

The motion for judgment on the pleadings should be granted and the complaint dismissed. The motion to strike out the defenses should be denied.