JOSEPH BURSTYN, INC., Plaintiff, *v.* EDWARD T. McCAFFREY, as Commissioner of Licenses of the City of New York, Defendant.

Supreme Court, Special Term, New York County, January 5, 1951.

*O'Connor & Ferber* for plaintiff.

*John P. McGrath, Corporation Counsel (Saul Moskoff, Joseph J. Lucchi* and *Murray Rudman* of counsel), for defendant.

*Osmond K. Fraenkel, Robert Markewich, John Finerty, Arthur Garfield Hays* and *Herbert Monte Levy* for New York City Civil Liberties Committee and another, *amici curiæ.*

STEUER, J.  On December 22, 1950, defendant, commissioner of licenses, notified the Paris Theatre Corporation that if it continued to exhibit a motion picture called " The Miracle " steps would be taken in regard to its license.  Defendant gave further notice to the plaintiff, the distributor of the film that similar action would be taken in regard to any theatre which exhibited the film.  Upon the film's being shown at the Paris

Theatre he suspended the license of the theatre, apparently for as long as it threatened to show the picture. He took this action because as he says, he found the picture "both officially and personally to be a blasphemous affront to a great many of the citizens of our city."

It is admitted that defendant's action amounts to a ban of the picture. The action seeks to enjoin him from so doing and the motion seeks a temporary injunction to prevent such action pending the trial. Two questions are presented: whether the commissioner has any authority to take such action, and, if he has, whether that authority was capriciously or arbitrarily exercised. On this application, quite properly, stress was laid on the first proposition being purely a question of law. The second question might properly raise factual issues which could not be decided on this application.

The right to determine whether a motion picture is indecent, immoral or sacrilegious is vested solely and exclusively in the Education Department of the State. Complete regulations for review and licensing are provided by statute (Education Law, §§ 120–132). This power negatives the existence of coequal powers in any municipal officer (*Hughes Tool Co.* v. *Fielding,* 188 Misc. 947, affd. 272 App. Div. 1048, affd. 297 N. Y. 1024), and a local law which purports to give such municipal officer regulatory powers as to the content of films is unconstitutional and void (*Monroe Amusement Co.* v. *City of Rochester,* 190 Misc. 360).

These simple principles dispose of the issue here and were it not for some slight confusion resulting from section 132 of the Education Law nothing more need be said. That section gives authority to the Board of Regents to enforce the provisions enacted in the legislation (Education Law, art. III, part II), but does not relieve any State or local peace officer from detecting and prosecuting any violation of law. At the time the *Hughes Tool Co.* case (*supra*) was decided the showing of an immoral film was a crime. And it was decided then that a criminal prosecution for showing a licensed film would not be enjoined. But thereafter the Legislature forbade criminal prosecution for the exhibition of a licensed motion picture (Penal Law, § 1141). The provisions of the Education Law above referred to were not changed. This means that peace officers have duties in respect to films, for instance bringing to justice the exhibitor of an unlicensed film which offended against decency. But it is clear that they have no duties with respect to the content of films which have been licensed.

Questions have been raised as to whether the municipal charter and Administrative Code of the City of New York do in fact give the commissioner any such power as he exercised or threatened to exercise. To review these questions would require more space than can properly be devoted to a discussion of matters not necessary to decision. The same is true of the issue of whether blasphemy per se can be the grounds of suppressing an exhibition. It may not be amiss to state that the commissioner of licenses is not the protector from affronts of a large portion of our citizens or even of all of them. They can protect themselves first by ignoring the exhibition and secondly any individual can seek to have the Board of Regents revoke its permit or if he can show that the license was granted through an abuse of power he will find the court just as ready to relieve against such an abuse as it is to restrain this one.

Motion granted.