John E. Cone, J.
Defendants New York City Transit Authority and the Transport Workers Union of America, CIO, challenge the legal sufficiency of the complaint pursuant to rule 106 of the Buies of Civil Practice. The action is one brought by plaintiffs for a judgment declaring, among other things, that the collective bargaining agreement entered into by the defendants as of July 1, 1954 and its extension in September, 1955 are illegal and void. After the complaint was served the Transport Workers Union applied to the court for leave to *348 intervene as a party defendant and the application was granted upon consent of the plaintiffs.
In substance the complaint alleges that the individual plaintiffs are members of the plaintiff Civil Service Forum and are employed in positions which are classified in the competitive class of the classified civil service of the State of New York and that the defendant New York Transit Authority has fixed their compensation on an hourly basis. The defendant New York City Transit Authority is a public benefit corporation created by section 1801 of the Public Authorities Law and is charged with the statutory duty of operating the rapid transit and surface transportation facilities which comprise the New York City transit system.
On May 24, 1954 the Transit Authority in the exercise of its managerial powers passed a resolution which, among other things, granted a wage increase to its hourly paid employees, made certain provisions with respect to sick leave, holiday allowances and other working conditions and established a procedure for the processing and determining of grievances. The resolution, as amended on June 21, 1954 also provided that an election be conducted by the American Arbitration Association in which the employees paid on an hourly basis could choose a labor union or other organization to be their exclusive representative for the presentation and processing of grievances. The secret balloting of these employees took place on June 25, 1954 and it appears that the Transport Workers Union was overwhelmingly successful in all the employee groups except the Queens and Staten Island bus divisions where the Amalgamated Association of Street Electric Railway and Motor Coach Employees of America A. F. L. won.
Effective as of July 1, 1954 the defendant Transit Authority made a written agreement with the Transport Workers Union and Amalgamated concerning wages, hours, working conditions and grievances and for exclusive representation of such employees. The complaint alleges that since July 1, 1954 the defendant has continuously implemented and given effect to the resolutions, election and the above-mentioned agreement by meeting from time to time only with the Transport Workers Union and Amalgamated and discussing with them proposed adjustments of working conditions and grievances and refusing to permit plaintiffs to participate in such discussions. The complaint also alleges that the defendant Transit Authority has refused the request of the plaintiff Salter that it permit the plaintiff Civil Service Forum or the plaintiff Kirkpatrick to act as Salter’s representative in the presentation, hearing and *349 determination of a personal grievance of Salter. The complaint states that the defendant has given the Transport Workers Union the exclusive right to present and participate in the adjustment of employee grievances, even where the aggrieved employees were not members of the Transport Workers Union or Amalgamated, also the exclusive right jointly with the defendant to select an impartial advisor and to present grievances to him for his opinion and recommendation.
The complaint also alleges that the individual plaintiffs did not agree to the provisions of the agreement designating the Transport Workers Union and Amalgamated as exclusive representatives and that the plaintiff Civil Service Forum refused the Transit Authority’s request that it sign the collective bargaining agreement on the ground that it discriminated against such plaintiff and that it violated the rights of civil service employees. The complaint alleges further that the resolutions, election, agreement and extension of agreement as implemented by the defendant Transit Authority are illegal and void because they discriminate in favor of and give to the Transport Workers Union and Amalgamated preferential advantages over the plaintiffs. As stated above, in addition to the other relief sought, plaintiffs ask that the agreement be declared to be null and void.
By making the present motion to dismiss the complaint the defendants admit the facts alleged in the complaint and such inferences as can fairly be drawn therefrom (Pletman v. Goldsoll, 264 App. Div. 393). Such a motion also poses the question as to whether a proper case for invoking the jurisdiction of the court to make a declaratory judgment is presented (Rockland Light & Power Co. v. City of New York, 289 N. Y. 45, 50, 51) and the court should decide this question at the threshold of the action when the issue is raised (Red Robin Stores v. Rose, 274 App. Div. 462, 466).
In enacting the law creating the New York City Transit Authority, the Legislature has given the Authority broad powers with respect to the management and maintenance of the New York City Transit System. In such respect title 15 of article 7 of the Public Authorities Law grants the Authority the power to “ exercise all requisite and necessary authority to manage, control and direct the maintenance and operation of transit facilities transferred to it for the convenience and safety of the public.” (§ 1804, subd. 15.) The Authority is also granted the power to “ do all things necessary or convenient to carry out its purposes and for the exercise of the powers granted in this title.” (§ 1804, subd. 16.)
*350 At the outset it might be pointed out that our courts have consistently held that they will not review the wisdom of proposed contracts made by a public agency but will restrain only such acts as are prohibited by statute or are illegal (Admiral Realty Co. v. City of New York, 206 N. Y. 110). There the court said (p. 125): “It is to be borne in mind at the outset and at every point of our discussion that this court has nothing whatever to do with the wisdom of the proposed contracts. If the municipality and the various officials acting in its behalf have the power to make them then the questions whether it is wise to do so and whether their terms are advantageous for the municipality and public are solely for the consideration and decision of those officials. After all the criticism and discussion which have been directed at the present transit situation in New York it is only just and reasonable to assume that public officials charged with the duty of bettering that situation have entered on their task with care, all the wisdom and foresight at their command, and with complete devotion to the public welfare. But even if we should doubt whether they have reached the best possible solution of a great and perplexing problem, our sole and only duty still would be simply to determine whether the Constitution permits the legislation and contracts in question and there again it is to be remembered that our duty is to be so discharged if possible within fixed principles of law as to uphold rather than condemn the legislation and the proposed action of the various state and municipal authorities thereunder. ’ ’
In formulating an answer to the questions propounded here, we must consider whether there is anything in the Constitution or in the pertinent statutes of this State which can be said to impose a restriction upon the power of the defendant Transit Authority to enter into a collective bargaining agreement with the Transport Workers Union and the Amalgamated. The Constitution of the State of New York contains no such restriction but it does provide that appointments and promotions in the civil service must be made on the basis of merit and fitness. An examination of the agreement clearly indicates that it does not violate this constitutional mandate. Indeed, the agreement specifically safeguards the civil service rights and status of the Authority’s hourly employees, for it provides: “Nothing contained in this article shall be construed to deny any employee his rights under Section 15 of the New York Civil Bights Law or under applicable Civil Service laws and provisions.” It is also clear that there is no law on the statute books of this State which makes it illegal per se for a public agency to negotiate and execute a collective bargaining agreement with a union.
*351 Parenthetically it may be stated that prior to the time the public agencies took over the management of the New York City Transit System, these facilities were operated by private interests. The same problems the private companies and the city had to deal with in their labor relations with the unions representing the transit employees confront the defendant Authority today. In this respect the relationship between the Authority and its employees is sui generis and to such extent it differs from the employer-employee status in other public agencies in the city and State.
It is quite apparent from a reading of the agreement that the Transit Authority has deliberately and intentionally sought to maintain and protect the civil service rights of its employees and at the same time has endeavored to conform to the statutory duties imposed upon it by law. The agreement contains no limitation or impairment of the right of any employee to express his own views, grievances or complaints and in such respect the agreement states: “It is understood, as further defined in this article, that nothing herein shall deprive any individual employee or employees from presenting and processing his or their own grievance through the procedures provided in this article.”
As to the rates of pay for hourly employees, these are also fixed in the agreement subject to the approval of the proper municipal and State authorities. The agreement states: “ Effective January 1, 1954, subject to approval by the Municipal Civil Service Commission, the State Civil Service Commission and the Mayor of the City of New York of the necessary changes in minimum and maximum rates of pay for the respective positions, the wage rates for hourly paid employees serving in the positions listed in Appendix A attached hereto shall be the rates set forth in said Appendix.”
Provision is also made in the agreement that strikes by employees will not be countenanced, this in conformity with the provisions of the so-called Condon-Wadlin Law (Civil Service Law, § 22-a) which provides: “ During the term of this agreement there shall be no strike, sit down, slow down, stoppage of work, or wilful abstinence, in whole or in part, from the full, faithful and proper performance of the duties of employees authorized or sanctioned by any of the Unions.”
It thus appears that the Authority has made provision for the protection of the civil service rights of its employees and that it has also complied with the applicable statutory requirements.
The complaint also alleges that the foremen and other supervisory officials of the defendant have refused to hear and consider personal grievances submitted to them by several hourly- *352 paid employees. This charge is extremely vague hut in any event there does not appear to he any allegation in the complaint to the effect that these particular employees brought their grievances to the attention of the general superintendent, the general manager or any of the three members of the defendant Authority. In the absence of such an allegation it would seem that the plaintiffs are not entitled to relief directing that official action be taken upon such charges.
The papers also disclose that a fact-finding committee appointed by the Mayor of the City of New York, after a careful study of the labor conditions existing in the New York City Transit System, recommended: “ That in the public interest and in the interest of harmonious and stable relations, the Authority enter into a written agreement with the Unions fixing wages, hours and certain of the working conditions of its employees for a fixed term, binding on the Authority and the Unions until June 30, 1956.”
In accordance with such recommendation and in order to avoid a chaotic and demoralizing condition which would follow from a serious breakdown in its labor relations, the defendant Authority adopted the resolution which resulted in the election of the Transport Workers Union and the Amalgamated as the representatives of the overwhelming majority of the Transit Authority’s hourly paid employees. The agreement subsequently executed with these unions was negotiated for the purpose of protecting the health, safety and vital interests of the people of the city and State of New York and to establish and maintain harmonious and stable labor relations with the unions. In the circumstances, it seems clear that these compelling reasons were sufficient to warrant the defendant Authority in fostering a peaceful settlement of its prospective labor disputes by entering into the challenged agreement.
It is also my view that this court may not limit by judicial construction the powers which the Legislature has conferred upon the defendant Authority without limitation. Nor may it define the bounds within which these powers may be exercised, except as it finds such bounds implicit in the statute. Since there is nothing in the statute creating the Authority, in the Constitution or in any other applicable statute which interdicts the execution of a collective bargaining agreement by the defendant Authority with the unions, the court is of the opinion that under the broad powers granted the Transit Authority, it could properly enter into the agreement in question.
The complaint fails, therefore, to state a cause of action for a declaratory judgment and the defendant’s motions to dismiss the complaint are granted. Submit orders.