CIVIL SERVICE FORUM, by FREDERICK Q. WENDT, Its President, et al., Appellants, *v.* NEW YORK CITY TRANSIT AUTHORITY, Respondent, and MICHAEL J. QUILL, as International President of the Transport Workers Union of America, CIO, Intervenor-Respondent.

Second Department, May 20, 1957.

*Lester G. Knopping* and *Nathan Grossman* for appellants.

*Edward L. Cox, Jr., Daniel T. Scannell* and *Helen R. Cassidy* for respondent.

*Michael Klein, John F. O'Donnell* and *Asher W. Schwartz* for intervenor-respondent.

*Francis R. Curry* for Brotherhood of Locomotive Engineers, *amicus curiæ.*

*David A. Savage* for Signal Electricians Benevolent Association, Inc., *amicus curiæ.*

NOLAN, P. J. Appellants are Civil Service Forum, a labor union, and several members thereof, hourly paid employees of New York City Transit Authority (referred to hereinafter as the Authority). The action is for a declaratory judgment that a certain agreement and acts, or parts thereof, are illegal and void. By consent, Michael J. Quill, as International President of the Transport Workers Union of American, CIO (referred to hereinafter as TWU), was admitted in the action as an adverse party. The Authority and TWU, instead of serving answers, moved to dismiss the complaint for insufficiency on its face. The appeal is from the order granting these motions. By permission of this court, the Brotherhood of Locomotive Engineers and the Signal Electricians Benevolent Association, Inc., have filed briefs as *amici curiæ,* in support of appellants' position.

The question in the case, as stated by appellants, is whether the Authority may lawfully, by written agreement and acts implementing the agreement, grant *exclusive* collective bargaining rights to TWU and the Amalgamated Association of Street, Electric Railway & Motor Coach Employees of America, AFL (referred to hereinafter as Amalgamated) for all hourly paid employees. It is appellants' contention that such exclusive collective bargaining rights discriminate in favor of TWU and

Amalgamated and give them preferential advantages over appellants and other employees who are not members of said union, that such preferential advantages do not promote the efficiency and integrity of the public service or any other lawful public purpose or policy, and that their sole effect is to encourage membership in the favored unions and to discourage membership in the other unions, and that, consequently, such exclusive collective bargaining rights unconstitutionally deprive appellants of liberty and property without due process of law, of the equal protection of the laws and of the right to petition the government for redress of grievances and are, therefore, illegal and void.

Respondents, on the other hand, assert that the challenged resolutions and agreement do not constitute or refer to an *exclusive* collective bargaining contract and that the Authority had the right, voluntarily, to enter into the agreement.

The complaint is lengthy, covering over 15 pages of the record. It is alleged, in substance, that pursuant to resolutions of the Authority, an election was held for the selection, by its hourly paid employees, of a labor union in each of several groups, to be the employees' exclusive representative for the presentation and processing of grievances. TWU was elected such representative in all the groups except two, in which Amalgamated was successful. Effective as of July 1, 1954 the Authority entered into a written agreement with TWU and Amalgamated, annexed to the complaint as Exhibit C, concerning, among other things, wages, hours, working conditions and grievance procedures and providing for the exclusive representation of employees by such unions. That agreement was subsequently modified and extended.

It is also alleged, in considerable detail, that since July 1, 1954 the Authority has implemented and given effect to the resolutions, election and agreements by refusing to permit other unions, including appellant union, to represent employees in grievance matters, has refused to discuss adjustments of wages, hours and working conditions with appellants; and has otherwise discriminated against them and exceeded its statutory authority. The relief requested is a judgment declaring, in effect, that the agreements, resolutions, election and acts implementing them, or certain portions thereof, are illegal and void.

It may be noted that Exhibit C, the agreement of July 1, 1954, at the outset names various unions, including TWU, Amalgamated and appellant union, and any other union representing hourly paid employees, as parties to the agreement, but provides that " This agreement shall inure to the benefit of only such

of the above named Unions or organizations who [sic] affix their signatures to and become parties to this agreement." It is a comprehensive document, stating in article I that the signatories are desirous of assuring to the people of the City of New York an efficient, economical and safe transportation service and of providing hourly paid employees with wages and working conditions as good as are reasonably possible. The contract then follows the customary form of a collective bargaining agreement setting forth provisions regarding management rights, reciprocal obligations, wages, working conditions, sick leave, job classification, grievance machinery, restrictions on strikes, and the term of the agreement.

Article VIII, regarding the grievance procedure, recites that TWU and Amalgamated are designated as the exclusive union representatives for presenting and processing employee grievances for hourly paid employees in the named divisions and that "nothing herein shall deprive any individual employee or employees from presenting and processing his or their own grievances through the procedures provided in this Article." Detailed provisions are then made for the processing and settling of grievances which may be presented by any employee, either orally or in writing, personally or through the union elected as the exclusive union representative of employees in that group. It is also provided that nothing contained therein " shall be construed to deny to any employee his rights under § 15 of the New York Civil Rights Law or under applicable Civil Service laws and regulations."

In holding that the complaint failed to state facts sufficient to constitute a cause of action, the Special Term adverted to the rule that the court would not review the wisdom of proposed contracts made by a public agency, if they were within the power of the agency making them, citing *Admiral Realty Co.* v. *City of New York* (206 N. Y. 110), referred to the statutory powers of the Authority, the absence of any statute or constitutional provision forbidding the contracts here in question, and the laudable purpose of fostering peaceful labor relations which led to its adoption, and concluded: " Since there is nothing in the statute creating the Authority, in the Constitution or in any other applicable statute which interdicts the execution of a collective bargaining agreement by the defendant Authority with the unions the court is of the opinion that under the broad powers granted the Transit Authority, it could properly enter into the agreement in question." (3 Misc 2d 346, 352.)

It may be observed, before considering the arguments of the parties, that they all agree that the Authority could not be *compelled* to bargain collectively with its employees, or to enter into written agreements with them. (See Labor Law, § 715; *Railway Mail Assn.* v. *Corsi*, 293 N. Y. 315, 322, affd. 326 U. S. 88; *White* v. *Boland*, 254 App. Div. 356; *Petrucci* v. *Hogan*, 5 Misc 2d 480; *Quill* v. *Eisenhower*, 5 Misc 2d 431; *Matter of Erie County Water Auth.* v. *Kramer*, 208 Misc. 292; *New York City Tr. Auth.* v. *Loos*, 2 Misc 2d 733, 742.) It may also be noted that the *amici curiæ* are not entirely correct in arguing that the Special Term erred since it reached its conclusion on a finding of absence of any prohibition against the Authority's actions rather than on a finding that the Authority had the power to enter into the agreement. While the Special Term did emphasize the lack of any statutory provisions forbidding the agreement in question, it also held that under the broad powers granted, the Authority could properly enter into the agreement.

We are in accord with that conclusion and believe that the Authority had such power and that the resolutions, election, agreements and policy statement attacked were valid and constituted no abridgement of the statutory or constitutional rights of the hourly paid employees who were not members of TWU or Amalgamated.

The Authority was created, and its powers and duties are defined, by chapter 200 of the Laws of 1953, which added title 15 to article 7 of the Public Authorities Law (§ 1800 *et seq.*). Subdivision 1 of section 1801 creates a board to be known as the New York City Transit Authority, which " shall be a body corporate and politic constituting a public benefit corporation." Subdivision 1 of section 1802 states that the purposes of the Authority are the acquisition of the transit facilities operated by the Board of Transportation and their operation for the convenience and safety of the public on a self-sustaining basis exclusive of capital costs. Subdivision 2 of section 1802 provides that the Authority shall be regarded as performing a governmental function in carrying out its corporate purpose and in exercising the powers granted. The general powers of the Authority are set forth in section 1804 and include:

" 4. To make rules and regulations for its organization and internal management.  *  *  *

" 6. To appoint employees and fix their compensation subject to the provisions of the civil service law.

"8. Pursuant to the provisions of this title, to construct, reconstruct, improve, maintain and operate any transit facility, whether now existing, or constructed, acquired or provided in the future, and to fix fares on any such transit facilities.

\* \* \*

"11. To make or enter into contracts, agreements, deeds, leases, conveyances or other instruments.

\* \* \*

"15. To exercise all requisite and necessary authority to manage, control and direct the maintenance and operation of transit facilities transferred to it for the convenience and safety of the public \* \* \*.

"16. To do all things necessary or convenient to carry out its purposes and for the exercise of the powers granted in this title."

Subdivision 1 of section 1810 provides that employees in the competitive and labor classes of the classified civil service in the employ of the Board of Transportation shall be transferred to comparable positions with the Authority, and subdivision 2 states that "appointment, promotion and continuance of employment \* \* \* shall be governed by the provisions of the civil service law and the rules of the municipal civil service commission".

In our opinion, as above indicated, the powers conferred on the Authority by section 1804 are sufficiently extensive to include the power to enter into the agreement of July 1, 1954. It may be conceded, as appellants argue, that it is the general rule that governmental agencies have only those powers which are conferred expressly or by necessary implication, that power is not to be inferred, and that the principle of strict construction should be applied. (See, e.g., *Village of Fort Edward* v. *Fish,* 156 N. Y. 363, 372; *City of Buffalo* v. *Stevenson,* 207 N. Y. 258, 261; *City of New York* v. *Maltbie,* 274 N. Y. 90, 98; 3 Sutherland on Statutory Construction [3d ed.], § 6603.) However, giving due consideration to those principles, we nevertheless believe that the agreement in question could be entered into validly under the Authority's power to maintain and operate the transit system, to enter into contracts and to do all things necessary or convenient for the exercise of the express powers granted. It is difficult to conceive of language broader in scope or conferring greater general power in the operation of the transit system, than that which is used in the statute. Indeed, while it has been held that the implied power must be necessary and not merely convenient (*People ex rel. City of Olean* v.

*Western New York & Pennsylvania Traction Co.,* 214 N. Y. 526, 529), that rule seems inapplicable where, as in the case at bar, the statute (Public Authorities Law, § 1804, subd. 16) provides that the Authority may " do all things necessary *or convenient* " for the exercise of the powers granted (emphasis supplied).

The agreement of July 1, 1954 was entered into, as stated in article I thereof, for the purpose of assuring the people of the City of New York efficient, economical, safe and dependable transportation service, to provide the employees with wages, hours, working conditions and grievance procedures as good as are reasonably possible, and to protect the interest of the public through a definite understanding of the respective rights, duties, privileges, responsibilities and obligations of the Authority, the employees and the unions. To do so, the agreement provided for a fixed period during which wages and working conditions would be stabilized, subject to the approval of the appropriate statutory bodies and with due regard for the civil service rights of the employees. If, as is apparent, the Authority was of the opinion that such an agreement would enable it to plan more intelligently for its future activities, to set up its budgets and to ensure the operation of the transit facilities on a self-sustaining basis, pursuant to the statutory mandate, we do not believe, on consideration of the broad powers conferred by the statute, that it should be held that the Authority exceeded its powers in making the agreement, in the absence of controlling authority requiring such a result.

In reaching that conclusion, we find it unnecessary to determine whether the Authority may legally enter into an *exclusive* collective bargaining agreement with a union, as the agreement here involved is not of that character. The contract, far from being " exclusive " could have been signed by any and all of the employees' labor organizations, including appellant union and the *amici curiæ,* which were willing to fulfill its covenants, including the undertaking therein contained, to co-operate in securing an amendment to the Rapid Transit Law, designed to reduce the amount of sick-leave payments. In that event, the Authority would have been obligated to sit down with such unions and discuss adjustments in wages, as provided in paragraph B of article IV and such signatories would also have been entitled to participate in the selection of the " Impartial Advisor," as provided in paragraph D of article VIII. To say that such an agreement is an " exclusive " collective bargaining agreement is to ignore its terms, which must prevail over appellants' interpretation or characterization of its provisions. (*Red Robin Stores* v. *Rose,* 274 App. Div. 462, 465.)

It is true that in matters affecting employees' grievances, the exclusive right to represent employees is given to those unions which prevailed in the election held for that purpose, as is the right to discuss the method of picking jobs within a classification and proposed new work schedules. However, those provisions, or the provision giving such unions the right to be informed of grievances affecting other employees or a basic provision of the contract, do not in our opinion constitute the agreement an *exclusive* collective bargaining contract, or one which the Authority has no power to make. The employee, in every case, has the right to present grievances personally, and his rights as a civil service employee are further expressly reserved by the provision that nothing contained therein '' shall be construed to deny [him] his rights under § 15 of the New York Civil Rights Law or under applicable Civil Service laws and regulations.'' And, under the broad powers conferred upon the Authority, we believe it has the right to limit the representation of employees in its grievance procedure to the labor organization which has received the majority of votes in the particular unit, to avoid being harassed by employees who might shop from one union to another in an attempt to gain support in the presentation of grievances, and in the interests of efficiency in processing and determining grievances which are presented. Nor is there anything improper or illegal, in our opinion, in providing that, where a basic interpretation or application of a contract or rule is involved, notice be given to the representative of the majority of those affected in order that their views be made known to management.

No case has been found in this State, and none has been called to our attention, which has passed on the question of the power of the Authority to enter into the agreement of July 1, 1954, or any similar question. Appellants have cited a number of decisions made in other jurisdictions. All appear to involve facts which are different from those presented here, and are otherwise distinguishable. Support for our conclusion may be found, however, in *Norwalk Teachers' Assn.* v. *Board of Educ.* (138 Conn. 269) and *Local 266* v. *Salt Riv. Project Agric. Improvement & Power Dist.* (78 Ariz. 30). The opinion in the latter case, which involved the right of a labor union to strike and picket to enforce a collective bargaining agreement with a political subdivision of the State, contains language which appears to be appropriate here. After distinguishing many of the cases which appellants in the instant case have cited, the court said (pp. 38-39):

"In these cases we fail to find support for the District's contention that it is powerless to enter into a collective bargaining agreement with its employees. Moreover, the powers of this District are less to be determined by case law from other jurisdictions than by the legislative pronouncement which enabled such Districts to exist. * * *

"We think the question is whether the statutory provisions which define and authorize such districts to exist intend to deny the District the power of entering into such agreements with its employees. * * * Those parts of the statute which deal with the power of the District to enter into contractual relations are the following: the District is empowered

"'To make and execute all necessary contracts'. and further,

"'To make, execute, acknowledge and perform any and all contracts, agreements and obligations as they may deem proper for the interest of the district or to carry out or accomplish any of the purposes authorized or permitted by the provisions of this article * * *.'

"From the language of these provisions we see no intent to limit the contractual powers of the District as contended. The plain meaning of a statute must be observed. * * *

"That the District is not specifically given the power to make employment contracts, with the exception of an engineer, tells us little. The authorization to do business in itself implies the necessity of hiring labor. * * * To construe the statute otherwise would be to defeat the purpose of the legislation and lead to an absurdity which we refuse to do. * * *

"To say that the District is powerless to enter into one agreement covering the terms of employment of many of its employees but has the power to enter into approximately 750 separate negotiations would be an incongruity beyond reason. * * *

"If the board of this District finds that an agreement with its employees is a 'necessary contract', 'proper for the interest of the district or to carry out or accomplish any of the purposes authorized or permitted by the provisions of this article * * *', then from this language it has the power to make such agreements. The grant of express powers to exist and operate carries with it all the implied powers necessary to effectuate those expressly given. * * * This involves no delegation of discretion, the authority to enter into such an agreement or refuse is always in the Board.''

We believe that similar conclusions are required here. The Authority, unlike other agencies performing governmental functions, is required to run the transit system like a business,

in that its facilities must be operated on a self-sustaining basis (Public Authorities Law, § 1802, subd. 1). Recognized business practices should be permitted it, if they are fairly to be found within its express or implied powers and are not prohibited by any provision of law. We see no obstacle to the power of the Authority to enter into the agreement of July 1, 1954 which enables it to estimate its labor costs for a fixed period and to make necessary plans for the operation of its transit system on a self-sustaining basis as required by statute, where the agreement protects the civil service and other rights of the employees and is made subject to the appropriate provisions of the applicable statutes.

We see no merit in the claim that the agreement violates the employees' constitutional and statutory right to petition for the redress of grievances (N. Y. Const., art. I, § 9; Civil Rights Law, § 15; Civil Service Law, § 22-a, subd. 1). As has been stated, the agreement preserves the right of individual employees to present their grievances, and expressly provides that it shall not be construed " to deny to any employee his rights under § 15 of the New York Civil Rights Law or under applicable Civil Service laws and regulations." This contention again ignores the plain language of the agreement which, as has been noted, must prevail over appellants' interpretation of it. Neither is there merit in the argument that an employee may not be deprived of his right to designate a representative or a minority union to prosecute his grievances. We are referred to no statute in this State, applicable to governmental employees, which in any way resembles the provision in the National Labor Relations Act (U. S. Code, tit. 29, § 159, subd. [a]), interpreted in *Douds* v. *Local 1250* (173 F. 2d 764) and cited by appellants, that "any individual employee or a group of employees shall have the right " to present grievances to their employer. The other cases relied on require no discussion, as they do not involve situations analogous to that presented here.

The factual allegations of the complaint, which must be deemed admitted (*Kane* v. *Walsh,* 295 N. Y. 198, 203) indicate that foremen and other supervisory officials of the Authority have refused to hear grievances presented by some employees. That fact, however, does not establish the invalidity of the agreement of July 1, 1954 or the other resolutions of the Authority. It shows only that some of the Authority's employees have failed to act as required by the agreement. There is no allegation that complaint was made to the Authority as to those improper acts, or that the affected employees

resorted to any of the other steps outlined in the grievance procedure. The agreement may have been breached, but that is entirely different from saying that the agreement was illegal. The employees may have some right of action, but it is certainly not one for a judgment declaring that the agreement is void. Similarly, it seems immaterial, in this action for a declaratory judgement attacking the validity of the contract and the Authority's resolutions, that, as alleged in the complaint, TWU may have been permitted to solicit members in the Authority's offices or that request to discontinue deductions for TWU dues were unduly delayed. The contract did not require membership in any union and the solicited employees were free to act as they pleased. Insofar as the failure to discontinue deductions promptly is concerned, it obviously is not referable to any provision of the agreement or the resolutions and is not a matter for a declaratory judgment, other remedies being available. (Cf. *Goodman & Co.* v. *New York Tel. Co.,* 309 N. Y. 258, 266.)

The policy announcement of July 14, 1955, annexed to the complaint, directing supervisory employees of the Authority to deal only with unions which had been successful in the 1954 election, i.e., TWU and Amalgamated, adds nothing to appellants' position. The announcement related to " labor representatives claiming to represent hourly-paid employees ", and merely implemented the provisions of the agreement of July 1, 1954. It made no reference to the right of individual employees to present grievances nor did it purport to limit that right in any way and if the agreement was valid, the notice pursuant thereto was proper.

Appellants also argue that " special privileges " may not be granted to one class and denied to another class of public employees, where they have no reasonable relation to the efficiency and integrity of the public service. Assuming that that is so, we find no such improper " special privileges " in the instant case. All employees are treated alike, in that they have the right to present their grievances personally. The special privilege, if it may be so denominated, is extended to the union which is permitted to represent an employee, and the question, in the last analysis, is whether such a right or privilege may be restricted to the union chosen by the majority. As stated above, we believe that the Authority could properly enter into such an agreement, and the cases cited by appellants to support the instant argument do not require a contrary conclusion.

Appellants also attack the agreement as " illusory ", arguing in substance that many of the provisions are required by statute and that a contract requiring a party to perform a duty imposed upon him by law is without consideration. They point also to the cancellation clause giving the Authority the right to terminate the agreement upon notice. That argument requires little discussion. We find no right in appellants, who are not parties to the agreement, to attack it for want of consideration or the unilateral right to terminate it.

We have considered the other arguments advanced by appellants and the *amici curiæ*, and are of the opinion that they are equally without merit. It should be noted that the parties have discussed the merits of their respective positions as fully and as completely as though the facts had been determined after a trial, as indeed they may, since the contract, resolutions and policy statement attacked by appellants are before the court, and not only are their provisions admitted for the purposes of the motions to dismiss, but they cannot be controverted by respondents. All the material facts involved in the controversy, as alleged in the complaint, have been, and must be, conceded to be true, and that controversy has been determined, on the basis of those facts, by the decision made at Special Term.

What appears to have been overlooked, however, is that a declaration of the rights of the parties may not be made, where, as here, the complaint has been dismissed on motion for failure to state a cause of action. Neither should a complaint be dismissed, on such a motion, if a proper case for a declaratory judgment is otherwise established, merely because a plaintiff may not be entitled to a declaration of his rights as he claims them to be. (*Rockland Light & Power Co.* v. *City of New York,* 289 N. Y. 45.) We consider that a proper case for a declaratory judgment is presented, and it may be that orderly procedure should require the service of answers, and a determination of the merits of the controversy thereafter upon appropriate motions. (Cf. *Strauss* v. *University of State of New York,* 282 App. Div. 593, 595.) We are reluctant, however, to compel the respondents to resort to what would appear, in this case, to be unnecessary procedure. The conceded facts are before us now, as fully and as completely as though answers had been served and appropriate motions for affirmative judgments had been made. The material allegations of the complaint are not only constructively admitted, but are, as they must be, actually admitted, and the parties have in effect by their argument of the merits of their respective positions,

on this appeal, requested this court to determine, on appellants' complaint, their rights with respect to the matters therein referred to. Respondents have not only asked for a dismissal of the complaint, but in their notices of motion have also demanded " such other, further and different relief as may be proper ". (Cf. *Thompson* v. *Erie Ry. Co.,* 45 N. Y. 468, 476; *Acosta* v. *Miller Transp. Co.,* 276 App. Div. 1005.) In such a case, there being no issue of fact, a declaratory judgment may appropriately be directed. (*German Masonic Temple Assn.* v. *City of New York,* 279 N. Y. 452; *Rockland Light & Power Co.* v. *City of New York,* 289 N. Y. 45, 53, *supra.*) It is our opinion that this is a proper case in which to act on the implied request of the respondents (see *Rockland Light & Power Co.* v. *City of New York, supra*) and to direct a declaratory judgment in accordance with the views herein expressed.

The order should be reversed, without costs, the motions to dismiss the complaint should be denied, and judgment should be directed for the respondents declaring that the resolutions, election, agreements, and policy statement attacked by appellants are valid, with costs.

BELDOCK, MURPHY, UGHETTA and KLEINFELD, JJ., concur.

Order reversed, without costs, motions to dismiss the complaint denied, and judgment directed for respondents declaring that the resolutions, election, agreements, and policy statement attacked by appellants are valid, with costs.