ERIE COUNTY WATER AUTHORITY, Respondent, *v.* JAY KRAMER et al., Individually and Constituting the New York State Labor Relations Board, et al., Appellants.

Fourth Department, November 13, 1957.

*Philip Feldblum* and *George E. Moehringer* for New York State Labor Relations Board, appellant.

*Lipsitz & Green* for Utility Workers Union of America, Local 360, CIO, appellant.

*Laurence J. Olmsted* and *Melvin Bong* for respondent.

WILLIAMS, J. Both respondents have appealed from an order of the Supreme Court which restrains the respondents from proceeding against the petitioner, Erie County Water Authority, before the New York State Labor Relations Board on a charge of unfair labor practices filed by the respondent Utility Workers Union of America against the Water Authority. The essence of the charge is the refusal of the Authority to bargain collectively with the union as representative of the Authority's employees.

In the proceeding below, instituted under article 78 of the Civil Practice Act, the Authority questioned the jurisdiction of the respondent board to entertain and determine the union's charge, alleging that the Authority is an agency exempted from the general provisions of the Labor Relations Act by section 715 of the Labor Law. The respondents-appellants, on the other hand, contend that section 1059 of the Public Authorities Law and not section 715 of the Labor Law applies. In brief, this is the question presented for our determination.

Section 1059 is as follows: " Any public officer or employee under civil service, selected by the authority may, with the consent of the commission, board or department by which he or she has been employed, be transferred to the authority and shall be eligible for such transfer and appointment without examination to comparable offices, positions and employment under the authority. The salary or compensation of any such officer or employee shall after such transfer be paid by the authority. But notwithstanding the provisions of this act, any such officers or employees so transferred to the authority, pursuant to the provisions of this section, who are members of or beneficiaries under any existing pension or retirement system, shall continue to have all rights, privileges, obligations and status with respect to such fund, system or systems as are now prescribed by law, but during the period of their employment by the authority, all contributions to any pension or retirement

fund or system to be paid by the employer on account of such officers or employees, shall be paid by the authority; and all such officers and employees who have been appointed to positions under the rules and classifications of the personnel office of the County of Erie shall have the same status with respect thereto after transfer to the authority as they had under their original appointments. It is hereby declared that in the interest of efficiency and insofar as may be practicable, all employees engaged in the operation of any property or properties, except in an executive capacity, at the time such property or properties shall have been acquired by the authority, pursuant to the provisions of this act, shall become the employees of the authority. *The authority shall be deemed an employer within the meaning of the state labor relations law.* The appointment and promotion of all employees of the authority shall be made in accordance with the provisions of the civil service law (constituting chapter seven of the consolidated laws) and such rules as the personnel officer of the county of Erie may adopt and make applicable to such authority." (Italics added.)

Section 715 of the Labor Law reads: "The provisions of this article shall not apply to the employees of any employer who concedes to and agrees with the board that such employees are subject to and protected by the provisions of the national labor relations act or the federal railway labor act, or to employees of the state or of any political or civil subdivision or other agency thereof, or to the employees of any charitable, educational or religious association or corporation, no part of the net earnings of which inures to the benefit of any private shareholder or individual, except that the provisions of this article shall apply to employees of such charitable, educational or religious associations or corporations whose services are performed in connection with the operation of a building owned or operated by such an association or corporation and used or occupied as a commercial or industrial enterprise operated for the production of profit, irrespective of the purposes to which such profit may be applied, and which employees are not engaged in the charitable, educational or religious activities of such association or corporation."

Also of importance is section 1072 of the Public Authorities Law: "In so far as the provisions of this title are inconsistent with the provisions of any other act, general or special, or of any local law, the provisions of this title shall be controlling."

The Erie County Water Authority was created by chapter 845 of the Laws of 1949. This chapter was repealed by chapter

804 of the Laws of 1950 and re-enacted by chapter 804 of the Laws of 1950 which specifically provided that the repeal was not to be deemed a dissolution of the corporate existence of the Authority. In subdivision 4 of section 1053 of the Public Authorities Law the Legislature declared that the Authority was created "for the benefit of the people of the county of Erie and the state of New York, for the improvement of their health, welfare and prosperity". That section (subd. 1) also specifically refers to the Authority as a "public benefit corporation".

The Authority was formed primarily for the purpose of acquiring and operating the properties formerly held by the Western New York Water Company, a corporation privately owned and operated. It was contemplated, therefore, when this law was passed, that the main asset that the Authority would acquire was a privately owned utility corporation, none of the employees of which would have civil service status, but who might well be members of a union. Because of the functions of the Western New York Water Company in supplying water and services to residents of Erie County, it was essential that the transition be effected in such a manner that there would be complete continuity of service to consumers and no interruption in operations. Therefore, section 1059 was enacted with a view to such continuity of service and employment, and also to define the rights and benefits available to Authority employees after the acquisition of the Western New York Water Company properties. These rights and benefits included the protection afforded by civil service status; "appointment and promotion * * * in accordance with * * * the civil service law"; the retention of classifications and positions without the necessity of taking examinations; membership in the New York State Retirement program *and* that the Authority occupy the status of an "employer within the meaning of the state labor relations law." There are other provisions relating to transfers of civil service employees to employment by the Authority that we need not necessarily consider at this time although they reveal a general plan of benefits to transferred employees, whether civil service or otherwise.

It is interesting to note the historical activities of the Authority. Pursuant to its purposes and powers, it acquired the operating plant and property of the Western New York Water Company on December 23, 1953. In the interest of efficiency and continuity of operation, as mandated by said section 1059, about 108 of the Water Company's employees became employ-

ees of the Authority and were duly classified temporarily in the noncompetitive class of the civil service by the personnel officer of Erie County, pending final reclassification pursuant to the Civil Service Law. Of the employees so acquired, some 52 production and maintenance employees were members of the Utility Workers Union, Local 360 which had been recognized as the exclusive bargaining agent by the Western New York Water Company for four years, prior to the acquisition of the property by the Authority. No contract was in effect, however, at the time of acquisition, the last contract having expired 22 days before, on December 1, 1953. On December 22, 1953, the union advised the Authority that it represented the employees of the Water Company and that it desired to meet with the Authority for purposes of negotiating a new collective bargaining contract. The Authority, on January 12, 1954, advised the union that it declined to meet with the union for collective bargaining purposes inasmuch as section 715 of the Labor Law excluded the Authority from the operation of article 20 of the Labor Law (State Labor Relations Act).

The union thereupon filed charges with the Labor Relations Board, alleging that the Authority's refusal to bargain collectively constituted an unfair labor practice within the meaning of section 704 of the Labor Law. The board scheduled a hearing on February 23, 1954 to determine its jurisdiction. The Authority appeared specially to object to jurisdiction to conduct any proceedings against it. On February 15, 1955, the board issued a memorandum decision to the effect that section 715 of the Labor Law and section 1059 of the Public Authorities Law were not inconsistent; that the Authority had been specifically designated an employer within the meaning of the Labor Law and that collective bargaining could coexist with civil service status; therefore that the board properly had jurisdiction and should refer the matter to its regional attorney for investigation of the union charges on the merits. Thereafter on April 5, 1955, the board issued its complaint against the Authority, charging a violation of subdivision 6 of section 704 of the Labor Law, and scheduled a hearing for April 19, 1955 which was later adjourned until May 5, 1955. It was this complaint and charge by the board which, on April 28, 1955, gave rise to the Authority's petition commencing this article 78 proceeding.

Section 1059 of the Public Authorities Law provides in clear and unambiguous language: " The authority shall be deemed an employer within the meaning of the state labor relations law.'' Any ambiguity in such language necessarily must lie in

its application since, on its face, it can mean only that the Legislature had chosen to make the Authority subject to all the provisions of article 20 of the Labor Law.

Certain basic canons of statutory construction are set forth in McKinney's Consolidated Laws of New York, Book 1, entitled " Statutes ", representing " rules of law found in the Constitution of New York and the judicial decisions of the New York courts " (p. v). Among these are the rules that the plain language used in a statute should be construed in its natural and most obvious sense; that the interpretation should be workable; that the words used by the Legislature should be given purpose and meaning and not rendered nugatory, and that it should not be supposed that the Legislature will deliberately place words in a statute without any purpose in view. (§§ 71, 94, 143, 144, 231.) It is also a general rule of construction that a prior general statute yields to a later specific or special statute (*Williamsburgh Power Plant Corp.* v. *City of New York,* 255 App. Div. 214; *Hughes Tool Co.* v. *Fielding,* 188 Misc. 947, affd. 272 App. Div. 1048, affd. 297 N. Y. 1024; *East End Trust Co.* v. *Otten,* 255 N. Y. 283).

The conclusion appears inevitable that the Legislature meant precisely what it said when it designated the Authority as " an employer within the meaning of the state labor relations law." The language is plain and admits of no internal ambiguity. The intent to include these rather unique employees within the protection of article 20 of the Labor Law is certainly in keeping with the stated policy of the Legislature, as set forth in section 700 of the Labor Law, to encourage employees to organize and bargain collectively. This is the meaning and construction which is most reasonable and workable, and which most clearly will prevent the language from being meaningless, frivolous or nugatory. Unless the language means expressly what it says, it means nothing.

It may be pointed out that the general policy, set forth in section 715 as it was enacted in 1937 (L. 1937, ch. 443), must yield to the specific policy as to this Authority set forth in section 1059 enacted in 1949 (L. 1949, ch. 845) and section 1072 enacted in 1951 (L. 1951, ch. 104). Even if it be assumed that the Authority is included within the general scope of section 715 of the Labor Law, there is no reason to say that the Legislature could not choose to take the Authority out of the general rule, and, in fact, there is a good basis for such a choice, as was elucidated by the court in *New York City Tr. Auth.* v. *Loos* (2 Misc 2d 733, affd. 3 A D 2d 740). In analyzing the unusual nature of authorities and the resultant need of their

employees for bargaining rights, the lower court spoke as follows (p. 741): "A public authority, such as the Transit Authority, is at least semi-autonomous, that is, without steady or strong outside control. It has only a second-hand or diluted responsibility or accountability to the electorate. The persons constituting its management have no superiors and yet do not themselves at any time have to come before the voters, who at best exercise only a kind of remote control over them. Such an authority, however well intentioned it may be, tends to grow arbitrary in its dealings with the public and with its employees. Its very freedom from direct and constant accountability is apt to bring about this consequence. Nothing which has been said in this opinion is to be construed or interpreted as being in the least degree directly or impliedly critical of the present Transit Authority. My observations are of a general nature and not directed against any specific Authority or individuals."

While the court there said only that the Transit Authority might, but need not, bargain collectively, it should be emphasized that the Public Authorities Law did not place the Transit Authority in the position of an employer within the Labor Relations Act. It is clear, however, that the language of section 1059 supersedes that of section 715 if the latter section, in fact, applies.

Also, the provisions of section 1072 dictate that, in case of inconsistency with any other act, general or special, the provisions of the Public Authorities Law governing the Erie County Water Authority shall control.

The Authority asserts that the provisions of the Civil Service Law and the Labor Relations Act are incompatible and inconsistent, and that the civil service status given to the Authority employees precludes the use of collective bargaining. It should be noted that the Legislature, in creating the various water authorities used language identical with section 1059 ( Public Authorities Law, §§ 1101, 1129, 1159) in placing the employees under the Civil Service Law and in designating the authorities as employers within the meaning of the State Labor Relations Act. In only one water authority, the Suffolk County Water Authority, was this language omitted. In explanation for this we might consider the history of the Suffolk County Water Authority. It was created in 1934 under the County Law, three years prior to the enactment of the Labor Relations Act. The Suffolk Authority has had a long history of peaceful and successful bargaining relations with the union, representing its employees (Temporary State Commission on Coordination of State Activities, Staff Report on Public Authorities

under New York State, N. Y. Legis. Doc. 1956, No. 46, p. 223) and thus when the Suffolk County Water Authority Act was amended in 1950 and placed in the Public Authorities Law, there probably was no demand for or necessity of treating it in the same manner as the other four water authorities.

The Authority, however, argues that the intent of the Legislature supports its contention and cites the staff reports of the Temporary State Commission on Coordination of State Activities (N. Y. Legis. Doc., 1956, No. 46; N. Y. Legis. Doc., 1957, No. 26). These staff reports do follow the pattern of the Authority's contention and were embodied in a proposed new section of the Public Authorities Law (§ 2552), but this section was *not* enacted into law. If anything, the failure of this bill militates against the contentions of the Authority. Under any conditions, the declarations of any legislative committee in 1956 and 1957 can hardly be said to represent the intent of the Legislatures in 1949 and 1950 when section 1059 was enacted and re-enacted. Further, section 1059 was amended in 1957 (L. 1957, ch. 729) but the language here in issue was left unaltered.

The case of *New York City Tr. Auth.* v. *Loos* (2 Misc 2d 733, affd. 3 A D 2d 740, *supra*) supports the conclusion that collective bargaining is not inconsistent with civil service status. The employees of the Transit Authority were placed by statute under the Civil Service Law (Public Authorities Law, § 1204), but no provision was made with reference to the Labor Law. The court analyzed the distinctions between authorities and the usual public agency and then continued at page 741: " Thus, the Transit Authority, although only indirectly answerable to the people, may but need not, under existing law, engage in collective bargaining with its employees or accord to them any of the rights which are now universally accepted as belonging to labor."

There was, of course, no compulsion to bargain in the *Loos* case because the Transit Authority was not made an employer within the Labor Relations Act as was the Erie County Water Authority. The case does emphasize, however, that collective bargaining is not contrary to the civil service status of the employees; that collective bargaining agreements are fully available to cover those aspects which the Civil Service Law fails to cover.

*Civil Service Forum* v. *New York City Tr. Auth.* (3 Misc 2d 346, revd. 4 A D 2d 117) (only in that the Appellate Division reversed the granting of the Authority's motion for dismissal and granted instead a declaratory judgment in favor of the

Authority's position that the collective bargaining agreement was valid) considered the power of the Transit Authority to make a collective bargaining agreement with the Transport Workers Union of America, CIO. The agreement covered such items as hours, working conditions, grievances, exclusive representation and (subject to approval of the State and Municipal Civil Service Commission and the Mayor) wage rates. It then went on to recite (pp. 350–351): " ' Nothing contained in this article shall be construed to deny any employee his rights under section 15 of the New York Civil Rights Law or under applicable Civil Service laws and provisions.' It is also clear that there is no law on the statute books of this State which makes it illegal per se for a public agency to negotiate and execute a collective bargaining agreement with a union. * * * The same problems the private companies and the city had to deal with in their labor relations .with the unions representing the transit employees confront the defendant Authority today."

It was thus concluded by the court that the rights under the Civil Service Law were not restricted or abrograted by the collective bargaining agreement but rather that each functioned within its own scope without interference from the other, a situation which was deemed to be both legal and desirable. The Appellate Division in its opinion stated (4 A D 2d 123): " In our opinion * * * the powers conferred on the Authority by section 1804 are sufficiently extensive to include the power to enter into the [collective] agreement * * * under the Authority's power to maintain and operate the transit system, to enter into contracts and to do all things necessary or convenient for the exercise of the express powers granted."

The same thing is true of the situation here with the one difference that section 1059 does not leave the collective bargaining process as a voluntary implement but makes the Authority subject to all of article 20 of the Labor Law. There is no legal impediment to this as a legitimate policy choice of the Legislature. In fact, the policy of encouraging collective bargaining and of expanding its scope is explicitly set forth in section 700 of the Labor Law. It is necessarily the Legislature which must be the judge of the wisdom of such expansion, and it has spoken clearly in section 1059 to further its policy of fostering peaceful labor relations. The Authority cites cases such as *Railway Mail Assn.* v. *Murphy* (180 Misc. 868) and *Petrucci* v. *Hogan* (5 Misc 2d 480) to indicate a contrary policy with respect to State employees but those cases were

concerned primarily with the undesirable effects of strikes by public employees and with the effects of a closed or union shop on the merit and fitness standard of civil service, not with the application of bargaining rights in general. In the case before us, the Authority's employees have received the benefit of civil service status and they must necessarily accept whatever curtailment such status causes in the scope of their bargaining rights. The fact that there may be some curtailment does not mean that whatever rights that remain to them are not valuable. Nor is it necessary for us here to determine just what rights they have; to whatever extent they exist, these employees may enjoy them. This is quite different from saying they should not have any bargaining rights when the Legislature has expressly indicated the contrary result.

The order should be reversed and the motion denied.

All concur. Present — McCurn, P. J., Kimball, Williams, Bastow and Goldman, JJ.

Order reversed on the law, without costs, and motion denied, without costs.