OPINION OF THE COURT
Hortense W. Gabel, J.
Motions Nos. 15 and 16 of September 19, 1978 are consolidated for disposition.
In this matter, the court is called upon to determine whether chapter 201 of the Laws of 1978, including section 23 (subd 3, pars [a]-[h]) of chapter 201 of the Laws of 1978, is unconstitutional on several grounds alleged by plaintiff Patrolmen’s Benevolent Association (PBA). Chapter 201 amends the New York State Financial Emergency Act (FEA) for the City of New York (L 1975, ch 868).
Section 23 (subd 3, pars [a]-[h]) of chapter 201 of the Laws of 1978 imposes a new limitation on the bargaining and arbitration provisions of the New York City Collective Bargaining Law (Administrative Code of City of New York, § 1173-7.0, subd c) based on the city’s ability to pay wage increases and other benefits.
The court must also determine whether section 23 (subd 3, pars [a]-[h]), by allegedly removing "arbitration as an available tool”, has eliminated the ban on public employee strikes contained in the Taylor Law (Civil Service Law, §§ 209, 209-a, 210).*
*80 CHAPTER 201 OF THE LAWS OF 1978 AND THE LEGISLATIVE
FINDINGS
The FEA was enacted in 1975 and is predicated on legislative findings that a financial emergency existed in the city and that the emergency constituted a clear and present danger to the health, safety and welfare of its inhabitants. (L 1975, ch 868.)
The FEA provided for the creation of an Emergency Financial Control Board to review, control and supervise the financial management of the city. Other provisions regulated the investment of funds by pension and retirement systems for public employees and imposed a wage freeze on city employees. The FEA’s constitutionality has been sustained.
In chapter 201 of the Laws of 1978, the Legislature found that the financial emergency continued to exist in the city (§ 1-a) and that, "It is a matter of substantial and imperative state concern that the city not fail to meet its obligations”. Chapter 201 continued and supplemented the provisions of the FEA in order to obtain Federal guarantees of city obligations and return the city to fiscal responsibility. The measure, inter alia, repealed the wage freeze (L 1978, ch 201, § 35).
Existence of the facts found by the Legislature is presumed, although subject to rebuttal (United States v Carolene Prods. Co., 304 US 144, 152; Lincoln Bldg. Assoc. v Barr, 1 NY2d 413, 415). And these legislative findings as to a "public emergency” are entitled to "great weight” (East N. Y. Sav. Bank v Hahn, 293 NY 622, 627, affd 326 US 230; see Block v Hirsh, 256 US 135, 154-155).
Preliminarily, this court finds that chapter 201 is in consonance with the police powers of the State. (Wein v Beame, 43 NY2d 326, 331; New York Public Interest Research Group v Steingut, 40 NY2d 250, 257; Montgomery v Daniels, 38 NY2d 41, 54.)
THE PROVISIONS OF SECTION 23
Section 23 (subd 3, pars [a]-[h]) of chapter 201 of the Laws of 1978 enacts new subdivisions 3 through 6 of section 7 of the FEA. Basically, it provides that any report or recommendation of an impasse panel established pursuant to the *81 New York City Collective Bargaining Law (Administrative Code, § 1173-7.0, subd c) or finding of the Collective Bargaining Board which provides for increases in wages or fringe benefits to city employees must, in addition to other specified criteria, consider and give "substantial weight” to the city’s "financial ability” to pay such increases. "Financial ability to pay” is defined as "the financial ability of the city * * * to pay the cost of any increase * * * without requiring an increase in the level of city taxes existing at the time of the commencement” of impasse proceedings under section 23 (subd 3, pars [a], [c], [d]). (L 1978, ch 201, § 23, subd 3, par [h].) Section 23 (subd 3, pars [a]-[h]) is concerned, of course, with all city taxes and is not limited to real estate taxes.
THE RESTRICTION ON TAX INCREASES
The plaintiff PBA argues that section 23 (subd 3, pars [a]-[h]) violates section 10 of article VIII of the State Constitution which states that the city shall not tax real estate in any fiscal year in an amount exceeding 2Vi% of the average full valuation of taxable real estate of the city.
Thus, according to the plaintiff, if at the time that impasse proceedings were intiated, the city was taxing real estate at less than 2ti%, section 23 (subd 3, pars [a]-[h]) would preclude the city from "asserting its constitutionally guaranteed prerogative” to tax up to 2Vi% in order to provide increases.
There is no merit to plaintiff’s argument. It ignores the clear language in the last paragraph of section 10 of article VIII of the State Constitution which states: "Nothing contained in this section shall be deemed to restrict the powers granted to the legislature by other provisions of this constitution to further restrict the powers of any county, city, town, village or school district to levy taxes of real estate.” (Emphasis added.)
This language, coupled with the absence of any restriction upon the power of the Legislature to fix a lower limit of permissible taxation (other than a limitation relating to debt service), empowered the Legislature to enact section 23 (subd 3, pars [a]-[h]) of chapter 201 of the Laws of 1978.
The FEA is also valid under section 12 of article VIII of the New York State Constitution which provides that, "It shall be the duty of the legislature * * * to restrict the power of taxation, assessment, borrowing money, contracting indebted *82 ness and loaning the credit of counties, towns, cities and villages, so as to prevent abuses in taxation assessments”. (See Flushing Nat. Bank v Mutual Assistance Corp. for City of N. Y., 40 NY2d 731; Kelly v Merry, 262 NY 151, 160; Bank of Rome v Village of Rome, 18 NY 38.)
Moreover, plaintiff’s argument is limited to real estate taxes, yet section 23 (subd 3, pars [a]-[h]) is not so limited. The Legislature has "absolute discretion” to impose, amend or repeal any kind of local taxes (except for real estate taxes to pay debt service). (Gautier v Ditmar, 204 NY 20, 27; Quirk v Mutual Assistance Corp. for City of N. Y., 41 NY2d 644.)
It should also be noted that section 23 (subd 3, pars [a]-[h]) does not restrict the city from levying taxes up to the permissible tax limit established by the State Constitution. There is nothing in the act which precludes city officials from voluntarily increasing the level of taxation within the constitutional limit if they believe it wise or appropriate to do so, as long as the city has given consideration to its financial ability to pay.
As Judge Fuchsberg noted in his concurring opinion in City of Amsterdam v Helsby (37 NY2d 19, 41) regarding the effect of the "panels’ decisions”: "the cities or towns * * * remain free to make their own decision as to how they are going to meet such cost, whether by taxation, cutbacks in spending or other means.”
Finally, the reasonableness of section 23 (subd 3, pars [a]-[h]) of chapter 201 of the Laws of 1978 in holding down arbitration awards to amounts the city can afford within existing revenue resources is manifest (cf. Faitoute Iron & Steel Co. v Asbury Park, 316 US 502, 512).
EQUAL PROTECTION
Plaintiff argues that section 23 (subd 3, pars [a]-[h]) violates the equal protection clauses of the Federal and State Constitutions since "it places plaintiff in a different position than that of any other brother police organization throughout the State of New York” and according to plaintiff it may render the bargaining position of the PBA a nullity.
The Taylor Law in section 209 specifically provides that its impasse procedures are inapplicable to the fire and police organizations of New York City. (Civil Service Law, § 209.)
Section 212 of the Taylor Law (Civil Service Law, §212) provides that the local government may adopt its own impasse *83 procedures and pursuant thereto the New York City Collective Bargaining Law (NYCCBL) was adopted (Administrative Code, § 1173-4.0). The effect of that legislation is that the PBA is classified with other New York City employee organizations for this purpose.
Since procedures of the NYCCBL are applicable to all municipal unions, including the PBA, with limited exceptions, there is no inequality of treatment among the municipal unions.
The equal protection clause does not require absolute symmetry in classification, but all distinctions must be reasonably related to the legislative objective (People v Acme Markets, 37 NY2d 326; Gleason v Gleason, 26 NY2d 28.)
This court believes that classification distinctions between New York City and up-State police and firemen and inclusion of the PBA in the NYCCBL are reasonable, that there was more than a minimal rational relationship between the classifications and a legitimate State purpose and that the equal protection clauses are not violated. (Civil Serv. Employees Assn. v Helsby, 439 F Supp 1272, 1277; United States ex rel. Buonoraba v Commissioner of Correction of City of N. Y., 316 F Supp 556; Manes v Goldin, 400 F Supp 23, affd 423 US 1068; Matter of Rosenthal v Hartnett, 36 NY2d 269.)
Furthermore, section 23 (subd 3, pars [a]-[h]) applies to all unions with which the city bargains. It does not create any new classification but merely affects the standards which are to be applied uniformly to impasse proceedings.
Plaintiff PBA also argues that the equal protection clauses are violated because those unions failing to reach settlement will find a diminishing share of the municipal budget available to them. There are safeguards to prevent this in paragraphs (e) and (c) of subdivision 3 of section 23. (L 1978, ch 201.) Particularly, paragraph (c) of subdivision 3 of section 23 provides that voluntary wage and benefit agreements shall also be subject to the city’s "financial ability * * * to pay”, thereby insuring equity and equal protection for all municipal unions. Plaintiff’s argument that the bargaining position of the PBA may be rendered a nullity has no merit and does not warrant discussion.
SECTION 23 AND THE STRIKE PROHIBITION
The PBA contends that section 23 (subd 3, pars [a]-[h]) of *84 chapter 201 of the Laws of 1978 deprives it of arbitration as an available tool in contract negotiations in violation of the equal protection clause and "that by so doing, the balance created by article 14 of the Civil Service Law [The Taylor Law] is upset and the restrictions on strikes of public employees are similarly removed.” The New York State Constitution does not confer upon public employees a constitutional right to collective bargaining. Their right to bargain collectively is merely statutory and strikes by public employees are banned. (Civil Service Law, § 200.) The earlier Condon-Wadlin Law (Civil Service Law, § 108, repealed by L 1967, ch 392) banned strikes and the present Taylor Law (Civil Service Law, § 210) imposes strict penalties for violation of the ban.
In 1974, the Taylor Law (Civil Service Law, § 209, subd 4) provided for binding arbitration when negotiations reach an impasse. Plaintiff’s arguments that these amendments were vitiated by section 23 (subd 3, pars [a]-[h]) thereby "reinstating” the right to strike is meritless. The strike prohibition is not contingent upon procedures employed in the collective baragining process. (Civil Serv. Forum v New York City Tr. Auth., 3 Misc 2d 346, revd 4 AD2d 117; Matter of Erie County Water Auth. v Kramer, 4 AD2d 545, affd 5 NY2d 954.) There can be no trade-off or "balance” since it is the State’s long standing and independent policy to prohibit strikes by public employees.
HOME RULE
Plaintiff urges that chapter 201 of the Laws of 1978 contravenes the constitutional home rule provision of section 2 (subd [b], par [2]) of article IX of the State Constitution, since it is an act "in relation to the property, affairs or government” of a local government and, therefore, required a request by two thirds of the members of the Legislature.
The court rejects this argument. A home rule request was not required since chapter 201 treats matters of substantial and imperative State concern as set forth in the legislative findings of the 1975 and 1978 legislation. (Adler v Deegan, 251 NY 467.) This is true even though as Chief Judge Cardozo said in his concurrence in Adler v Deegan (supra, p 489), this is a situation "where State and city concerns overlap and intermingle.” (Wambat Realty Corp. v State of New York, 41 NY2d 490; Matter of Board of Educ. v City of New York, 41 NY2d 535; City of Amsterdam v Helsby, 37 NY2d 19, supra.)
*85 Actually, in chapter 201 of the Laws of 1978 the Legislature has treated matters of far wider scope than the "property, affairs and government” of local government. Chapter 201, therefore, does not contravene section 2 (subd [b], par [2]) of article IX of the State Constitution.
CONCLUSION
The motions by defendants are granted to the extent of declaring the challenged legislation to be constitutional. In a declaratory judgment action, the complaint may not be dismissed even though plaintiff is not entitled to the declaration it seeks. (Sweeney v Cannon, 30 NY2d 633; Lanza v Wagner, 11 NY2d 317.)
The motion for an injunction is denied.