OPINION OF THE COURT
Gabrielli, J.
In this case, we are called upon to determine whether *329 the plan by the City of New York and the Urban Development Corporation (UDC) to revitalize a section of midtown New York, to stem the decay of the area and to provide for the renovation of the Commodore Hotel constitutes a violation of the proscriptions against special tax exemptions and the contracting away of the power to tax which are contained in section 1 of article XVI of the New York State Constitution. Plaintiff appeals from an order of the Appellate Division, First Department, which affirmed a judgment of Supreme Court, New York County, granting defendant summary judgment and sustaining the constitutionality of the challenged plan to save the Commodore Hotel. We hold that the plan is not in violation of the Constitution, and therefore affirm the order appealed from.
The Commodore Hotel, owned by a subsidiary of the insolvent Penn Central Transportation Company, has itself fallen on evil times. The building, located near Grand Central Terminal in the very heart of the city, has deteriorated so greatly that it has been closed, and it is well on its way to becoming yet another boarded-up illustration of the grim realities of urban decay. Tax arrears on the building, including interest and penalties, amount to over 10 million dollars, and the possibilities of the city’s recovering the arrears from Penn Central in the foreseeable future are problematic at best. Indeed, due to certain protective orders of the bankruptcy court, the city is precluded from foreclosing during the pendency of the bankruptcy proceedings, which may well prove to be of long duration; and even, in fact, were the city to foreclose on the premises, there would apparently be considerable. difficulty in obtaining a purchaser willing to pay an amount commensurate with the tax arrearages alone. Penn Central itself is obviously in no position to renovate the hotel, and unless some action be taken, the building will simply disintegrate altogether, thus further contributing to the urban blight against which both the city and the State are struggling.[1] It appears that the cost of repairs are such that *330 rehabilitation is not economically feasible unless accompanied by some form of relief until the building begins to operate economically and the expenses of renovation can be recouped.
Faced with this problem, the city, UDC, Penn Central, and a private developer, Wembley Realty, Inc. (Wembley), formulated a complex plan which is intended to result in the reconstruction of the hotel by Wembley and ultimately restore it as a functionally integrated part of the business community of the city. It is hoped that this will have a beneficial effect on the midtown area as a whole, and will encourage continuing private investments in the area. Stripped to its essentials, the plan is as follows: Wembley will purchase the hotel from Penn Central for 10 million dollars;* [2] Wembley will then sell the building for one dollar to UDC; the purchase of the building by UDC will exempt the hotel from city taxes, pursuant to section 22 of the Urban Development Corporation Act (L 1968, ch 174, § 22); the city will waive its right under section 26 of the act (L 1970, ch 1041) for reimbursement from the State for an amount equal to the taxes it would have assessed against the building had UDC not purchased it; UDC will then lease the building back to Wembley under a 99-year lease; the rental will be payable to the city rather than to UDC; for the first 40 years of the lease, the rent will be less than the taxes which could otherwise be assessed, whereas for the remainder of the lease the rental will be equal to the taxes; and, at the termination of the lease, title to the property will vest in the City of New York.
Following the acceptance of this plan by the city council, plaintiff commenced this action, seeking a judgment declaring *331 the scheme to be in violation of section 1 of article XVI of our Constitution, which provides in pertinent part that "[t]he powers of taxation shall never be surrendered, suspended or contracted away * * * Exemptions from taxation may be granted only by general laws.” Plaintiff contends that the effect, and indeed the sole purpose of the plan is to grant the hotel a special tax exemption in violation of this explicit constitutional provision.
In proffering this argument, plaintiff is, of course, presented with an insurmountable obstacle in the fact that the property will obtain tax exempt status not by any claimed or alleged invalid legislation enacted by the city council, but rather by virtue of the purchase of the hotel by the UDC. Plaintiff seeks to overcome this difficulty by characterizing the UDC as a "straw man”, with no real interest in or connection with the project, which has been brought into the plan solely as a means of providing a tax exemption which the city could not grant directly. Plaintiffs attempt to so easily avoid the inconvenient fact of UDC participation in the plan is of no avail. It is not for us to speculate as to the motive for the UDC’s participation, nor to delineate the amount of active participation which is necessary to denominate a particular project a UDC project. Here, UDC will be the owner of the building, and it is enough that UDC has chosen to participate in a project which is designed to combat otherwise inevitable urban blight, and which is thus clearly in accordance with the benign purposes of the Legislature in creating UDC (see L 1968, ch 174, § 2).
 Turning then to the basic question of the plan’s validity, it should be noted initially that there exists a strong presumption of constitutionality which accompanies legislative actions (see, e.g., Montgomery v Daniels, 38 NY2d 41, 54), especially in the area of municipal financing (see, e.g., Wein v City of New York, 36 NY2d 610, 619-620). This is not to say, of course, that such actions must always be sustained without question (cf. Flushing Nat. Bank v Municipal Assistance Corp. for City of N. Y., 40 NY2d 731); they are, however, entitled to the benefit of the presumption, and will be sustained absent a clear showing of unconstitutionality (see, also, Wiggins v Town of Somers, 4 NY2d 215, 218-219). In the case before us, the purchase of the hotel by UDC will result in a valid tax exemption by operation of law, regardless of any action or inaction upon the part of the city. This is true whether the *332 plan was originally developed by the city, UDC, or Wembley; and this is so regardless of the extent of actual participation in the project by UDC. Thus, since the only tax exemption contained in the plan is the explicit statutory exemption granted UDC, the validity of which is unchallenged, it is apparent that there is no violation of the constitutional prohibition against special exemptions, and no contracting away of the power to tax by the city.
Plaintiff also claims that the plan is unconstitutional in that it improperly calls for a waiver by the city of its right to payment by the State, pursuant to section 26 of the UDC Act (L 1970, ch 1041), of an amount equal to the tax revenues which would have been derived from the property absent the exemption which will be created by the UDC purchase. It is argued with some force that since the tax exemption which will be created by virtue of the purchase of the hotel by UDC is an essential element of the project, and since it is possible that UDC might not have chosen to participate without the waiver by the city of its right to reimbursement, the waiver is the equivalent of an attempt by the city to provide an invalid special exemption. However, it should be noted that the constitutional prohibition against special exemptions is not to be automatically applied whenever a municipality is engaged in a business transaction which will of necessity have tax consequences upon another party to the transaction. The constitutional limitation on exemptions operates only to prevent the city in its sovereign role as tax gatherer from directly granting an exemption to a taxpayer (see City of New York v Long Is. R. R. Co., 49 AD2d 540, affd 43 NY2d 780 [decided herewith]). Moreover, in the present case, proper classification of the right which the city has waived obviates any potential difficulty.
We note that although the State has elected to provide funds to reimburse municipalities for the loss in tax revenues which would otherwise result from a purchase by UDC of previously taxable property, it is clear that these payments from the State cannot be classified as taxes, and thus waiving the right to receive such funds is not the equivalent of granting a special tax exemption. To consider these payments as taxes would be to ignore the realities of the relationship between the State and its subdivisions, and the essentially voluntary nature of these payments. Absent the statute, the State is under no obligation to make such payments, and a *333 municipality certainly lacks the power to demand such reimbursement from the State. The fact that the Legislature has decided to provide reimbursement for certain losses in tax revenues does not justify characterizing the payments as taxes. Rather, these funds constitute a grant from the State to the municipalities, and a refusal to accept such a grant is not to be construed as the provision of a special exemption from taxation simply because the grant was intended to remedy the loss in tax revenue which results from a purchase by UDC of taxable property.
Accordingly, the order appealed from should be affirmed, without costs.
Chief Judge Breitel and Judges Jasen, Jones, Wachtler, Fuchsberg and Cooke concur.
Order affirmed.

. Of considerable interest here are certain of the legislative findings which accompany the statutory provisions governing UDC: "It is further found and declared that there exist in many municipalities within this state residential, nonresidential, commercial, industrial or vacant areas, and combinations thereof, which are slum or blighted, or which are becoming slum or blighted areas because of substandard, insanitary, deteriorated or deteriorating conditions, including obsolete and dilapidated buildings and structures, defective construction, outmoded design, lack of proper sanitary facilities or adequate fire or safety protection, excessive land coverage, *330 insufficient light and ventilation, excessive population density, illegal uses and conversions, inadequate maintenance, buildings abandoned or not utilized in whole or substantial part, obsolete systems of utilities, poorly or improperly designed street patterns and intersections, inadequate access to areas, traffic congestion hazardous to the public safety, lack of suitable off-street parking, inadequate loading and unloading facilities, impractical street widths, sizes and shapes, blocks and lots of irregular form, shape or insufficient size, width or depth, unsuitable topography, subsoil or other physical conditions, all of which hamper or impede proper and economic development of such areas and which impair or arrest the sound growth of the area, community or municipality, and the state as a whole.” (L 1968, ch 174, § 2.)

. Although the city consented to the sale free of lien for tax arrears, it reserved its rights against Penn Central for these tax arrears. Viewed realistically, the city may well have improved its position, since the 10 million dollars are to be placed in escrow for several years, and the city is granted the option of settling its claim against Penn Central during that period for an amount equal to at least 50% of the arrears to be paid directly from that fund.