■ NEW YORK TELEPHONE COMPANY, Appellant, v GILBERT WADLE et al., Respondents, et al., Defendants. — In a condemnation proceeding, the condemnor, the New York Telephone Company, appeals (1) from an order of the Supreme Court, Westchester County (Sullivan, J.), dated August 18, 1982, which granted defendants Wadles' motion to confirm the report of the Commissioners of Appraisal (filed with the County Clerk on March 12, 1982), confirmed that report, and directed that the County Clerk enter judgment in favor of the defendants Wadle and against the New York Telephone Company, in the principal sum of $150,000, plus an additional award of $7,500 representing 5% of the $150,000 award pursuant to Condemnation Law § 16, and (2) from a judgment of the same court, dated September 2, 1982, entered thereon.

Appeal from the order dismissed, without costs or disbursements (*see, Matter of Aho,* 39 NY2d 241, 248).

Judgment reversed, on the law, without costs or disbursements, order vacated, motion of defendants Wadle to confirm denied, report set aside, and matter remitted to the Supreme Court, Westchester County, for appointment of and remittitur to new Commissioners of Appraisal to ascertain de novo the compensation to be made to the defendants Wadle, the owners of the property taken herein.

The subject proceeding arose out of the need for petitioner New York Telephone Company to erect a newer and more modern central office facility in Patterson, New York. The Wadles' 35,000 square-foot Patterson, New York property was improved with an approximately 90-year-old multiple-family frame dwelling, in poor condition, a detached barn, a two-car garage, a detached one-car garage and a frame outhouse. The property was contiguous to petitioner New York Telephone Company's existing Patterson, New York, central office facility.

The condemnation petition dated June 20, 1977 alleges and the record establishes the following: Since 1973 petitioner sought to purchase the property. In or about November 1973, claimant Gilbert Wadle indicated he would be willing to sell for $75,000. In March 1974, petitioner caused the property to be appraised. The appraiser reported that the property was worth $35,000. On April 1, 1974, the petitioner offered that amount to claimant Gilbert Wadle. On April 8, 1974 Gilbert Wadle gave petitioner a figure of $65,000 "but not less".

In view of claimants' position, the petitioner abandoned consideration of claimants' property and gave consideration to alternative sites, which proved to be unfeasible. In November 1976, claimants' attorney stated that his clients would sell for $75,000, and in December 1976, submitted a proposed contract of sale with a stated price of $75,000. On January 18, 1977 claimants' attorney advised, however that the offer of $75,000 "is no longer applicable". Petitioner then had the property appraised again; the appraiser reported that it was worth not more than $40,000. This amount was offered to claimants but in May 1977 the offer was rejected.

By notice of motion for immediate possession dated June 20, 1977, petitioner commenced this proceeding.

The condemnation petition revealed certain information concerning petitioner's cost studies, including the following: "Alternative plans have been considered by plaintiff but would require sites substantially removed from the present central office and would involve large and unnecessary expense of approximately $375,000 for, among other things, the rerouting of telephone cables from the present site to any alternate."

The $375,000 cost savings revelation did not escape the notice of the claimants' appraiser, of course. Thus, in the course of the proceedings, he filed an appraisal in which he cited the $375,000 cost savings revealed in the condemnation petition and supporting papers and he concluded that the highest and best use of the subject multiple family property was "for improvement with a new facility expanding the central office building of the New York Telephone Company". He further reported, however, that: "Were it not to satisfy the urgent needs of the Condemnor and reduce the costs mandated by that need, the alternate Highest and Best Use is found to be as it is currently employed with the potential of converting and enlarging the existing structure to accommodate professional offices."

Using an income capitalization approach in which he also found rental value for the then-vacant three unfurnished rooms in the attic of the house, the claimants' appraiser valued the

property at $87,966. He found a value of $88,500 under a market approach based on two whole-to-whole comparables, but stated that the market approach "has limited value due to the fact that there were only two comparable sales — one of which was not truly comparable". He found a value of $90,576 under the cost approach, but rejected that approach, and used it only as a check on the reasonableness of his conclusion as to value. He concluded that the value of the property under the "alternate highest and best use concept" was $88,000. However, he then added an increment of $187,500 to the $88,000 to derive a total value of $275,500. He justified the increment for the following reasons:

"VALUE BASED ON HIGHEST AND BEST USE

"With consideration to the fact that the Highest and Best Use of this property is for improvement with a central office building for the New York Telephone Company as a result of the ideal location adjacent to the existing utility building, it is the opinion of the Appraisers that an increment must be added to the value found for the alternate Highest and Best Use. This increment in value reflects the effect of value of the substantial cost savings the utility would enjoy by selecting this property as the site for their [sic] new facility as opposed to another location.

"It also reflects on the amount that a buyer, armed with the knowledge of the full capabilities of this property, would pay to acquire title to it. It cannot be 100%, for at that price the utility might change the focal point of their [sic] operations in this community with no additional cost.

"At 75% of the cost of relocation to a different site, the utility might still switch to another location, which might be a more suitable focal point than the present one in view of changing population trends and demands. Further, the Appraisers believe that another prospective buyer would not pay such an increment due to the degree of risk involved.

"Twenty-five percent of the cost, in the opinion of the Appraisers, would not adequately compensate the owner for the full value of his property although it is believed that another prospective buyer would happily pay that amount.

"The Appraisers conclude that an increment amounting to 50% of the cost of relocation is justified, for at that price a prospective buyer would be interested and the utility would still be saving $187,500.

"The Appraisers therefore conclude that the Fair and Reasonable Value of this property is $275,500".

The petitioner condemnor's expert reported that the income approach produced the highest estimate of value and he valued the property at $36,000.

The Commissioners of Appraisal concluded that the fair market value of the subject property based solely upon its availability for use as a multiple-family dwelling was $75,000 but that a 100% increment ($75,000) should be added "based on its unique proximity to the existing property of plaintiff". Accordingly, the commissioners reported that $150,000 should be awarded.

On motion of the defendants Wadle, the Supreme Court confirmed the report of the Commissioners of Appraisal. The petitioner-condemnor appealed.

We find that, notwithstanding the verbal clothing of the increment award, the increment was based not upon evidence of market value but upon speculation as to what a speculator would pay for the property based on the cost savings to the condemnor which were first revealed by the condemnor in the condemnation petition and supporting papers, and which manifestly reflected its internal cost studies. This was a fundamental and prejudicial legal error (*Fonda, Johnstown & Gloversville R.R. Co. v State of New York,* 29 AD2d 240; *cf. Matter of Port Auth. Trans-Hudson Corp.* [*Hudson Rapid Tubes Corp.*], 20 NY2d 457; *see, Matter of Town of Hempstead* [*Malibu Assoc.*], 81 AD2d 591, *revd on other grounds* 56 NY2d 1020).

As stated in *Fonda, Johnstown & Gloversville R.R. Co. v State of New York* (*supra,* pp 241-242):

"In determining just compensation for land appropriated, the fundamental question is what the owner has lost, not what the taker has gained. (*St. Agnes Cemetery* v. *State of New York,* 3 N Y 2d 37; *Onondaga County Water Auth.* v. *New York Water Serv. Corp.,* 285 App. Div. 655; *Matter of New York, Westchester & Boston Ry. Co.,* 151 App. Div. 50.) The court may consider 'any special intrinsic quality of the property taken, rendering it peculiarly adaptable for the purpose for which it was taken.' (*Matter of New York, Westchester & Boston Ry. Co., supra,* p. 56.) Thus, in the *Matter of Port Auth. Trans-Hudson Corp.* (20 N Y 2d 457), it was held that an award of scrap value for tunnel property, which was actually to be used in a public service, could not be said to be fair and just.

"It is clear, however, that the claimant is not entitled to recover as an item of damages any money saved by the State in availing itself of the former railroad site. (*Connolly* v. *State of New York,* 197 Misc. 1052; *Matter of Superintendent of Highways of Town of Frankfort,* 193 Misc. 617; *Matter of City of New York* [*New Gen. Hosp-Cinelli*], 280 App. Div. 196, affd. 305 N. Y. 835). The Court of Claims properly rejected the claimant's

contention that it was entitled to damages for the cost of excavation of rock and earth for the original construction of the railroad bed."

Accordingly, the award of the commissioners must be rejected because it is "based on an erroneous principle of law [and] 'shocks not only one's sense of justice, but one's conscience' " (*see, Matter of Huie [Fletcher — City of New York]*, 2 NY2d 168, 171, quoting from *Matter of City of New York [Old Third Ave]*, 241 App Div 13, 16 *appeal dismissed* 265 NY 503), and it cannot be held that "there [is] some competent evidence to support their findings" (*see, County of Sullivan v Emden,* 59 AD2d 957, 958) on the increment award.

There must be a new determination by new Commissioners of Appraisal. This condemnation proceeding was commenced in June 1977 under the former Condemnation Law, predecessor to the present EDPL (L 1977, ch 839 §§ 2, 3 eff July 1, 1978; *see, New York State Urban Dev. Corp. v Vanderlex Mdse. Co.,* 98 Misc 2d 264). The condemnation petition sought appointment of Commissioners of Appraisal (former Condemnation Law § 4 [8]). As previously noted, commissioners were appointed and they rendered their report, which was confirmed in the order and judgment appealed from.

In *Matter of Ossining Urban Renewal Agency v Lord* (60 NY2d 845), the appeal was from an order of the Appellate Division entered May 17, 1982, which affirmed an order and judgment (one paper) of the Supreme Court at Special Term, entered in Westchester County in a condemnation proceeding, confirming a report of the Commissioners of Appraisal awarding appellant Pine Top Building Corp. $250 as compensation for the extinguishment of its easement over the condemned parcel. Although the new EDPL became effective July 1, 1978, and thus was in effect at the time of the Court of Appeals determination in that case, dated November 3, 1983, that determination provided: "The order of the Appellate Division should be reversed, with costs, and the matter remitted to the Supreme Court to remand to the *commissioners of appraisal* for further proceedings in accordance with this memorandum" (*Matter of Ossining Urban Renewal Agency v Lord, supra,* p 847; emphasis supplied).

Further, although EDPL 501 (B) states that in "all claims arising from the acquisition of real property * * * the supreme court * * * shall have exclusive jurisdiction to hear and determine all claims arising from the acquisition of real property and shall hear such claims without a jury or without referral to a referee or commissioners" (*see, Yonkers Community Dev. Agency v Straus,* 65 AD2d 791) EDPL 706 states: "No action or proceeding pending at the time when this chapter takes effect, shall be

affected by any provision of this chapter, and the same may be prosecuted as if this chapter had not been enacted".

Accordingly, under all of the circumstances of this case, including the reasons for our reversal, the matter is remitted to the Supreme Court, Westchester County, for the appointment of and remittitur to new Commissioners of Appraisal to ascertain de novo the compensation to be made to defendants Wadle, the owners of the property taken herein (former Condemnation Law §§ 4 [8], 15; *Matter of Ossining Urban Renewal Agency v Lord,* 60 NY2d 845, *supra; cf. Yonkers Community Dev. Agency v Straus,* 65 AD2d 791, *supra*).

In view of the fact that there will be a de novo hearing and new determination, three further observations should be made.

On the record presented to us, we find no evidentiary basis for, or legal merit to petitioner's contention that no income value may be attributed to the condemnees' property because resumption "after a two-year abandonment, of the nonconforming use as a multi-family dwelling was prohibited". We note that the appraisers for *both* parties stated that the multifamily use was a legal, nonconforming use. They both used income approaches and it is not shown in this record on appeal that such use was abandoned and lost under the town zoning ordinance.

We also find no merit to petitioner's contention that because claimants' purportedly obstructive legal tactics allegedly prevented petitioner from obtaining actual physical possession of the premises until January 19, 1978, interest on any award should run from that date rather than the July 25, 1977 date of the order and judgment granting possession to petitioner.

We agree with petitioner, however, that since pursuant to an order dated October 14, 1980, claimants received a preliminary distribution from funds deposited by petitioner upon the taking, interest on that distribution to claimants should not be calculated and awarded after the date of distribution. Lazer, J. P., Bracken, Weinstein and Niehoff, JJ., concur.