◼ In the Matter of METROPOLITAN TRANSPORTATION AUTHORITY, Respondent-Appellant, v K. CAPOLINO DESIGN & RENOVATION, LTD., Appellant-Respondent.—In a condemnation proceeding consolidated for trial with a summary dispossess proceeding, the condemnee K. Capolino Design & Renovation, Ltd. (hereinafter Capolino) appeals, as limited by its brief, on the ground of inadequacy, from so much of a judgment of the Supreme Court, Westchester County (Marbach, J.), entered January 9, 1985, as awarded it the principal sum of $20,000 for the partial taking and prejudgment interest and the condemnor Metropolitan Transportation Authority (hereinafter MTA) cross-appeals from so much of the same judgment as awarded Capolino the principal sum of $20,000 for the partial

taking, and the principal sum of $31,924 as the reasonable value of the use and occupancy of the premises by the condemnor as a holdover tenant prior to the appropriation.

Justice Bracken has been substituted for the late Justice Gibbons (see, 22 NYCRR 670.2 [c]).

Ordered that the judgment is modified, on the law, (1) by deleting from the first and second decretal paragraphs thereof the phrase "at the rate of 4% per annum" and substituting therefor "at the rate of 4% per annum until and including December 31, 1982, and from January 1, 1983, at the rate of 9% per annum", and (2) by deleting from the second decretal paragraph thereof "April 18, 1980", and substituting therefor "November 24, 1979". As so modified, the judgment is affirmed insofar as appealed from, with costs payable to Capolino, and the matter is remitted to the Supreme Court, Westchester County, for the entry of an appropriate amended judgment.

We find no basis for disturbing the trial court's award of the principal sum of $20,000 for the partial taking and the principal sum of $31,924 for use and occupancy.

The subject property is 4.349 acres of industrially zoned land in the City of Yonkers which is bordered on the west by the Hudson River and on the east by railroad tracks. Of the total 4.349 acres, only 2.045 acres are above water. The property has no legal vehicular access whatsoever, although pedestrian access is available via the Glenwood Railroad Station and overpass. There being no sanitary sewer, the sewage from the buildings on the property is discharged directly into the Hudson River.

The property is improved with two main structures referred to as buildings "A" and "B". Building "B" is an obsolete, abandoned power plant originally constructed about 1900. This building contains a substantial vertical crack near its westerly end, and was described by Capolino's appraiser as being a "white elephant". He reported that the estimated cost to demolish this building and its accessory structure is $500,-000.

Building "A" is a smaller structure, erected around 1904. Part of this building is used and occupied by Consolidated Rail Corporation (hereinafter Conrail) as a substation to convert 11,000-volt A.C. current to the 600-volt D.C. current necessary to operate the railroad, and has been devoted to that use since its construction. Prior to Capolino's purchase of the property, Conrail occupied a small portion of building "A" for this purpose, under a lease, at a nominal rent of $575 per year.

This substation is critical to Conrail's operations. A member of MTA's Board of Directors testified that without it, the railroad would be brought to a "screeching point *[sic]*".

Consolidated Edison Co. of New York (hereinafter Con Edison), owner of the property since 1951, abandoned the building "B" power plant in 1963 as obsolete, and since 1974, has attempted to dispose of the entire property. Con Edison could not find a purchaser for the property and even attempted, without success, to give away the property to the City of Yonkers, the New York State Department of Parks and Recreation and the United States Bureau of Parks, all of whom declined to accept the property. Finally, in December 1978 after years of unsuccessful efforts to dispose of the property, Con Edison sold the entire parcel to Capolino for $30,000.

Capolino's president and sole shareholder, Kenneth Capolino, testified that prior to his purchase he had ascertained that the lease with Conrail was cancelable, and that "I looked at a tenant who had almost unlimited resources". As the new owner landlord, he attempted to negotiate a rent increase with Conrail to $140,000 per year. Dissatisfied with the course of negotiations, Mr. Capolino served a 60-day notice to cancel the lease as of June 30, 1979, and, thereafter, commenced summary proceedings to evict Conrail as a holdover tenant. In the course of the eviction proceedings, Capolino asked for a rental of $240,000 per year, which Conrail rejected as excessive, countering with an offer of $6,000 per year, which was declined by Capolino. MTA then instituted this condemnation proceeding to acquire only the portion of the building and land it was using as a substation. The MTA acquired title to that portion of the property sought on April 21, 1980. The summary proceeding and the condemnation proceeding were consolidated for trial.

At the trial, Capolino contended that the property taken was a specialty and should be valued and damages calculated by the summation method of sound value (reproduction cost less depreciation) plus the land value. Capolino contended that its damages for the partial taking were $520,000, consisting of $500,000 as the sound value of the improvements and $20,000 for land value.

The MTA appraiser, however, reported that the property was not a specialty and should not be valued by that method. The MTA expert reported that using an income approach would result in no value or a negative value, even if it were

assumed that the property had vehicular access and even if economic rent were derived from lease comparables. A negative factor heavily contributing to this lack of income capitalization value was the "white elephant" abandoned power house building, unrentable in its present condition, unsafe, requiring payment of real estate taxes and needing hundreds of thousands of dollars to demolish.

The MTA appraiser, however, looked to Capolino's $30,000 arm's length purchase price for the entire parcel, concluded that the property was purchased as a speculative venture, and, using this purchase price adjusted upward to $32,500 for time, and computing the percentage loss of a portion of the building "A" area, including supporting land at 39.4% of the property, arrived at the sum of $13,000 as the proper measure of damages for the partial taking.

The trial court concluded that the structure could not be classified as a specialty for primary compensation purposes, finding a failure to comply with a key specialty criterion, to wit: that the " 'improvement must be an appropriate improvement at the time of the taking and its use must be *economically feasible and reasonably expected to be replaced'* " (*Matter of County of Suffolk [C. J. Van Bourgondien, Inc.]*, 47 NY2d 507, 512, quoting from *Matter of County of Nassau [Colony Beach Club]*, 43 AD2d 45, 49; *Matter of Great Atl. & Pac. Tea Co. v Kiernan*, 42 NY2d 236, 240; *see also, Matter of Brooklyn Union Gas Co. v State Bd. of Equalization & Assessment*, 65 NY2d 472). We agree. The only possible customer for the substation rental was Conrail, its lease was cancelable, Conrail was not obligated to accept the rental terms dictated by its landlord, and Conrail had made plans to build a modern building at another location in the area. It was the condemnor —not Capolino—who was in the business of operating a substation to power its railroad. It was Conrail which would need the funds for a continued use at a different location and with a more modern station *(see, Matter of County of Suffolk [C. J. Van Bourgondien, Inc.], supra)*. Capolino's claim to an award of $520,000 for a taking of a part of a property the whole of which it had purchased for $30,000 is improperly derived from and predicated on the needs of Conrail and the MTA rather than the value of the property. The basic rule as restated in *New York Tel. Co. v Wadle* (111 AD2d 791, 794) is that, " '[i]n determining just compensation for land appropriated, the fundamental question is what the owner has lost, not what the taker has gained. *(St. Agnes Cemetery* v. *State of New York*, 3 N Y 2d 37; *Onondaga County Water Auth.* v. *New*

*York Water Serv. Corp.,* 285 App. Div. 655; *Matter of New York, Westchester & Boston Ry. Co.,* 151 App. Div. 50.)' " Further, Capolino is not entitled to recover as an item of damages the money saved by Conrail in condemning the power substation site.

Under all the circumstances, the trial court's award of $20,000 for the taking should not be disturbed and cannot be considered manifestly unjust *(see, Matter of Port Auth. Trans-Hudson Corp. [Hudson Rapid Tubes Corp.],* 20 NY2d 457, 469; *Matter of City of New York [Fifth Ave. Coach Lines],* 18 NY2d 212, 225).

We find no merit to the MTA's contentions that the taking award should be reduced to $13,000 and that the trial court's $31,924 use and occupancy award should be vacated.

Finally, we agree with Capolino's contention that the court's prejudgment interest award on the condemnation award and on the use and occupancy award should be modified upward.

The applicable statutory rate of interest at the time of the taking was 4% (McKinney's Uncons Laws of NY § 2501, L 1982, ch 681, § 4, as amended). This legislatively fixed rate is presumptively reasonable, though not determinative *(see, Matter of City of New York [Brookfield Refrig. Corp.],* 58 NY2d 532). The condemnee here, however, introduced no evidence before the trial court as to what it considered a more appropriate rate of interest. The presumptively reasonable rate of 4% cannot be increased in the absence of such proof before the hearing court *(Matter of City of New York [Brookfield Refrig. Corp.], supra,* at p 537). However, Unconsolidated Laws § 2501 was amended to increase the rate of interest paid in such circumstances to 9% commencing January 1, 1983, the first day of the MTA's fiscal year *(see, Matter of Reddick & Sons v Carthage Cent. School Dist. No. 1,* 91 AD2d 1182). Thus, the interest on both awards shall be computed at 4% from the commencement date until and including December 31, 1982. Thereafter, the interest rate of 9% shall apply.

The interest with respect to the use and occupancy of the subject property shall be deemed to run from November 24, 1979 (the half-way point between the date of the termination of the lease and the date of the partial taking), which is "a single reasonable intermediate date" (CPLR 5001 [b]). Thompson, J. P., Bracken, Eiber and Spatt, JJ., concur.